UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ASPEN AMERICAN INSURANCE CO., | ) | |
| as subrogee of Eastern Fish Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-CV-383 |
| | ) | |
| INTERSTATE WAREHOUSING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the motion for partial summary judgment filed by

Defendant Interstate Warehousing, Inc. (ECF No. 102). Plaintiff Aspen American Insurance filed

a response in opposition (ECF No. 129) and Interstate filed a reply (ECF No. 131). Aspen

American also filed a motion to strike Interstate's motion for partial summary judgment

altogether on the grounds that it is untimely (ECF No. 117). Interstate filed a response in

opposition (ECF No. 127) but Aspen American did not file a reply brief.[1] For the reasons

explained below, Aspen American's motion to strike is DENIED and Interstate's motion for

partial summary judgment is DENIED in part (as to Plaintiff's gross negligence claim) and

GRANTED in part (as to Plaintiff's conversion claim).

**DISCUSSION**[2]

---

[1] Also pending before the Court are several motions in limine filed by both parties. The
Court will rule on those motions in a separate order.

[2] Aspen American, as subrogee of Eastern Fish, sued Interstate Warehousing seeking
damages stemming from a roof collapse at Interstate's facility, which destroyed Eastern Fish's
Food Products. Aspen American brings several claims against Interstate, including two that are at
issue here: gross negligence and conversion. The Court will dispense with a more detailed
recitation of the underlying facts of this case, which have been recounted many times (including

**I. Motion for partial summary judgment by Defendant Interstate Warehousing (ECF No. 102) and Motion to strike by Plaintiff Aspen American (ECF No. 117).**

Interstate argues that it is entitled to summary judgment on Aspen American's claims for gross negligence and conversion:

> The undisputed evidence in this case shows that there is no genuine issue of material fact that supports Plaintiff's claims of gross negligence and conversion under Michigan common law or statutory law. Moreover, a review of all material facts in this matter precludes any reasonable person from finding that Defendant was grossly negligent prior to the subject roof collapse or engaged in conversion of the food products damaged by the subject roof collapse. As such, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims of gross negligence and conversion in this action.

Motion for Partial Summary Judgment, p. 1.

**A. Motion to strike.**

Aspen American moves to strike Interstate's motion for partial summary judgment, arguing that "it is untimely and violates this Court's scheduling order." Motion to Strike (ECF No. 117), p. 1. Indeed, the dispositive motion deadline in this case expired nearly three years ago, on October 29, 2018 (*see* docket entry at ECF No. 34). The parties filed cross-motions for partial summary judgment and the Court ruled on the issues presented in an Opinion and Order entered on March 13, 2019 (ECF No. 56). Therefore, argues Aspen American, the Court should not countenance Interstate filing a dispositive motion "two-and-a-half years after the deadline for dispositive motions, and nearly two years after this Court decided the parties' respective summary judgment motions and without seeking leave from the Court to do so, . . . without any reference as to its tardiness and without any argument justifying its filing." Plaintiff's Memorandum in Support of Motion to Strike (ECF No. 118), p. 1.

---

in this Court's Opinion and Order of March 3, 2019 (ECF No. 56), pp. 1-3)).

Aspen American's argument seems well taken given that dispositive motions were filed

and ruled on in this case. But Interstate insists that its motion *is* timely given the discussion

between the Court and the parties at the telephonic status and scheduling conference held on

December 9, 2020:

> Plaintiff's Motion to Strike should be denied in all respects because this Court
> modified the deadline to submit dispositive motions during the telephonic final
> pretrial conference held by this Court on December 9, 2020. Therefore,
> Defendant's Motion for Partial Summary Judgment . . . was not untimely pursuant
> to this Court's directive. . . . Moreover, as discussed by this Court during the
> telephonic final pretrial conference on December 9, 2020, Defendant's Motion for
> Partial Summary Judgment aims to simplify the issues to be presented to a jury in
> this matter. Additionally, dispositive motions were contemplated in the briefing
> schedule for "anticipated motions" discussed during the telephonic final pretrial
> conference. Accordingly, Plaintiff was on notice that it might be required to
> respond to dispositive motions, in addition to motions in limine, motions
> regarding expert testimony, and motions to strike, within the timeframe [sic] of
> the briefing schedule discussed during the December 9, 2020 telephonic final
> pretrial conference.

Defendant's Response in Opposition to Motion to Strike (ECF No. 127). In support of its

argument Interstate attached to its response a transcript of the hearing on December 9, 2020 (ECF

No. 127-1). (The official transcript of the hearing was docketed subsequently at ECF No. 139 and

the Court will refer to and quote from the official transcript.) The purpose of the hearing was to

set a briefing schedule for pretrial motions, which the Court understood to mean "Motion[s] in

Limine filed by both parties, motion for separation of witness filed by the defendant, motion to

have expert testimony filed by the defendant, motion to strike expert opinion filed by the

defendant." Transcript, p. 6. However, as Interstate correctly points out, the Court and parties

also discussed Aspen American's gross negligence and conversion claims, and whether they

could be litigated in a pretrial motion. The following discussion took place during the hearing:

3

> [DEFENDANT'S] ATTORNEY KEITH GASTON: Your Honor, this is Keith Gaston, again, for the defendant. I told you I would comment on the conversion issue as well. I think the Court's observation, when you raised that issue, is correct, in that it's not an issue that should be present for the jury in this case.
>
> THE COURT: Well, then I would suggest whoever wants to pursue a resolution of that by way of a further motion, let's include that in the matters that I'm about to [schedule] . . . we're going to set a briefing schedule for all those, and we can include other issues that you think, upon reflection, you may also want to submit and re-file. Then I'll leave that up to you, of course.

*Id.*, pp. 6-7. So while the purpose of the hearing was to set a schedule for common pretrial motions such as motions in limine, motions for separation of witnesses, and motions pertaining to expert witnesses, the Court opened the door to additional summary judgment motions by instructing that the parties were free to "include other issues . . . you may also want to submit and re-file." Based on the exchanges during the hearing, Interstate maintains that:

> During the course of the telephonic final pretrial conference, discussion was had between the Court and counsel regarding whether certain claims or issues, specifically Plaintiff's claim of conversion, should be presented to a jury at trial. . . . After discussion between the Court and counsel, the Court instructed the parties to consider filing or "re-fil[ing]" a motion in effort to pursue resolution of issues that should not be presented to the jury. . . . By doing so, the Court, *sua sponte*, modified the deadline to file or "re-file" dispositive motions to coincide with other "anticipated motions" prior to setting a trial date. Accordingly, Defendant's Motion for Partial Summary Judgment filed on March 1, 2021 is not untimely and should be considered on the merits.
>
> Moreover, it is abundantly clear from the transcript of the December 9, 2020 Telephonic Conference, that the Court provided the requisite good cause for modifying the dispositive motion deadline. Specifically, this Court found that "pair[ing] [the case] down so we're trying the case that needs to be tried to the jury based upon evidence that is required to make the determination" was good cause for modifying, or re-setting, the deadline to file dispositive motions in this matter.

Defendant's Response in Opposition to Motion to Strike, pp. 2-3. Accordingly, Interstate argues that its present motion is timely and properly before the Court. The Court agrees and therefore

will deny Aspen's motion to strike and consider the issues and arguments presented in the parties' summary judgment pleadings.

### B. Standard of review.

Federal Rule 56 states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "'If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial.'" *Simpson v. Gen. Dynamics Ordnance & Tactical Sys.-Simunition Operations, Inc*., 2019 WL 6912332, at *2 (N.D. Ind. Dec. 19, 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Id*. (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017)). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes.  *Id*. Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion,

summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). If it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

"Summary judgment is a critical moment for a non-moving party. It must 'respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018) (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). "Inferences supported only by speculation or conjecture will not suffice." *Id*. (citing *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 721-22 (7th Cir. 2018)). "Neither will the mere scintilla of evidence." *Id*. (citing *Grant*, 870 F.3d at 571).

**C. Gross negligence claim.**

The parties arguments on the issue of gross negligence can be summarized like this: Interstate insists it took affirmative steps to deal with an unprecedented snowfall and therefore cannot be liable for gross negligence, while Aspen American insists that Interstate's actions prior to the roof collapse were so woefully inadequate that they rise to the level of gross negligence.

Interstate argues as follows:

During the months of January and February 2014, alone, more than 70 inches of snow fell in Hudsonville with an additional three (3) inches of snow falling in the week leading up to the collapse. . . . After becoming aware of the record amount of snowfall on the warehouse roof, Interstate personnel became concerned about a possible roof collapse and began numerous efforts to monitor and remedy the situation. Interstates efforts included, but were not limited to, conducting frequent observations of the roof and providing verbal reports thereof, clearing pathways

6

and cleaning drains for the scuppers so that ice melt and snow could drain off, consulting with a structural engineer to help analyze the snow load capacity of the roof, collecting a sample of the snow on the roof to determine its weight, instructing warehouse personnel to listen for noises that could be a precursor to a collapse, instructing warehouse personnel to keep off the middle of the roof and to limit traffic as much as possible, to avoid excess weight on the roof, and an up close inspection of the steel joists using a scissor lift.

Defendant's Brief in Support (ECF No. 103), p. 4 (citations to evidentiary record omitted).

Aspen American, on the other hand, argues that "[i]n this case, defendant has not offered any evidence that it took action to prevent the Roof Collapse. Interstate did nothing to decrease the load on the roof or shore the roof from the inside. Interstate's 'inspections' did nothing to fix a dangerous condition." Plaintiff's Response in Opposition (ECF No. 129), p. 16. Aspen American also contends that Interstate is attempting to revive an issue on which the Court has already ruled:

As this Court has already held, "The issue of gross negligence, however, requires a determination as to the reasonableness of Interstate's conduct under the circumstances–a quintessential jury inquiry since it requires weighing the evidence (and, to a slightly lesser extent, credibility determinations)." [Quoting Court's March 13, 2019, Opinion and Order] This Court further held that:

Fact issues exist concerning the reasonableness of Interstate's actions, i.e., whether they constituted gross negligence, and so Interstate is not entitled to summary judgment on the issue of its ability to limit its liability.

* * *

Since the issue of the limitation clause is inextricably intertwined with the issue of the reasonableness of Interstate's conduct (i.e., the gross negligence issue), neither can be decided as a matter of law on summary judgment.

*Id*. at p. 19. Despite these clear instructions from the Court, Interstate seeks a do-over on this issue in the instant motion.

*Id*., p. 13.

In reply, Interstate argues that it is not seeking a "do-over" as Aspen American contends:

> Defendant recognizes and appreciates the fact that the Court has been briefed on the issue of gross negligence in the course of prior motion practice in this matter. However, it should be noted that Plaintiff previously sought summary judgment on its gross negligence claim which this court denied. This Court has not previously been asked to decide the issue of Defendant's gross negligence from the perspective of whether or not Plaintiff can prevail on its gross negligence claim and has not been asked to rule in Defendant's favor on the issue. Nor has the Court been provided facts, evidence, and argument which show that Plaintiff cannot prevail on its gross negligence and conversion claims. As such, Interstate is not seeking a "do-over on this issue" as Plaintiff suggests, but, rather, is providing the Court with the opportunity to address and dispose of Plaintiff's claim of gross negligence.

Defendant's Reply in Support (ECF No. 131), pp. 2-3. Interstate insists that "the undisputed facts and evidence precludes any reasonable person from finding that Defendant engaged in gross negligence or conversion[]" (*id.*, p. 2) and then proceeds to detail the actions it claims to have taken to prevent the roof collapse (*id.*, pp. 5-7). Interstate argues that even assuming its efforts to prevent the roof collapse were inadequate, they certainly did not rise to the level of gross negligence.

In the end it doesn't matter if Interstate's motion is an attempt at a "do-over," since the Court's conclusion doesn't change. The issue of gross negligence turns, as it always does, on the reasonableness of the defendant's actions and conduct. In this case, Interstate claims it took steps to prevent the roof collapse and Aspen American claims that Interstate "has not offered any evidence that it took action to prevent the Roof Collapse." The truth appears to lie somewhere in between but that is for a jury to determine. After the jury weighs the parties' evidence regarding what Interstate did or did not do, it can determine the reasonableness of those actions. In short, as the Court held in its previous order, "[f]act issues exist concerning the reasonableness of

Interstate's actions, i.e., whether they constituted gross negligence[.]" Whether Aspen American's argument that Interstate's conduct was grossly negligent is sufficient win over a jury remains to be seen; but it is sufficient to get to one. Accordingly, Interstate's motion for partial summary judgment on the issue of gross negligence is denied.

### D. Conversion claim.

The parties agree that Michigan law applies to Aspen American's conversion claim (*see* Defendant's Brief in Support (ECF No. 103), p. 7); Plaintiff's Brief in Opposition (ECF No. 129), p. 8); Opinion and Order of March 13, 2019 (ECF No. 56), p. 6)). Interstate argues that "[a] review of Michigan common law and statutory law regarding conversion, and all material facts thereto, preclude any reasonable person from finding that Defendant converted the Food Products under Michigan law." Defendant's Brief in Support, pp. 11-12. Interstate sets forth the legal definition of a claim for conversion under Michigan law as follows:

> Michigan common law defines conversion as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines Equipment, Inc. v. Columbian Distribution Services, Inc.,* 871 N.W.2d 136, 144 (Mich. 2015). Additionally, Michigan law includes a provision for statutory conversion, which requires a showing of common law conversion, with the added showing of conversion "to the other person's own use." MCL 600.2919a. Further, Michigan courts have defined "own use" as "a purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose." *Aroma Wines,* 871 N.W.2d at 138.

Defendant's Brief in Support (ECF No. 103), pp. 12. Aspen American also relies heavily on *Aroma Wines* to support its position, but Interstate argues that the case is easily distinguishable and, in fact, supports Interstate's argument that it did *not* commit conversion:

> In *Aroma Wines,* the defendant moved wine from a temperature-controlled storage area to an uncontrolled storage area, thereby destroying the wine, in order to renovate its refrigerated storage area. *Id.* at 139. Prior to the defendant's act of

9

> moving the wine, the wine was fit for sale. *Id.* Therefore, it was the defendant's
> act of moving the wine that destroyed the wine. *Id.* The Court found that the
> defendant had converted the wine for its own use after broadening the
> interpretation of "own use" to include "some purpose personal to the defendant's
> interest, even if that purpose is not the object's ordinarily intended purpose." *Id.* at
> 149. The Court further identified the common law elements of conversion as "any
> act of dominion inconsistent with that person's rights in that property." *Id.* at 144.

Defendant's Brief in Support (ECF No. 103), pp. 11-12. Interstate contends that unlike the

defendant in *Aroma Wines*, which made a unilateral decision to move its customer's wine to

accommodate a renovation to its facility (thereby converting the products "for its own use"),

Interstate disposed of Eastern Fish's products only after it was ordered to do so by the Michigan

Department of Agriculture. *Id*., p. 11. Interstate insists that its "compliance with the [Michigan

Department of Agriculture and Rural Development] Notice of Seizure was not a conversion of

the Food Products 'to its own use.'" *Id*., p. 14. Interstate argues as follows:

> Interstate's compliance with the MDARD's Notice of Seizure was not a
> conversion of the Food Products "to its own use". While Plaintiff argues that
> Defendant's compliance with the Notice of Seizure to satisfy its "own
> obligations" equates to using the Food Products for Defendant's "own use,"
> Plaintiff fails to recognize that compliance was not a purpose personal to
> Defendant's interests. In fact, it was not in Interstate's interest to dispose of the
> Food Products in accordance with the Notice of Seizure, as salvaging the Food
> Products and preparing them for further sale would have been more beneficial to
> Defendant's interests. In reality, it was in Eastern's best interest for the Food
> Products to be destroyed[.]

Defendant's Brief in Support (ECF No. 103), p. 14. Interstate also argues that even if its disposal

of the food products could be characterized as conversion, it was not the cause of Aspen

American's alleged damages:

> Further, it should be noted that, in *Aroma Wines,* the defendant's act of conversion
> (i.e. moving the wine) and cause of the wine's destruction benefitted the
> defendant. However, in the present matter, the Food Products were destroyed prior
> to Interstate's alleged acts of conversion (i.e. disposal of the Food Products) and

10

Defendant's disposal thereof was not for the personal use of Defendant. Therefore, unlike the defendant in *Aroma Wines,* Interstate did not benefit from the disposal of the Food Products, and did not convert the Food Products "for its own use." Accordingly, reasonable minds cannot differ in concluding that Defendant's disposal of the Food Products did not amount to statutory or common law conversion under Michigan law and, therefore, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's claim of conversion.

Moreover, it is important to note that, unlike the destruction of the wine in *Aroma Wines, Plaintiff's loss and/or alleged damages in the present matter was not caused by Defendant's alleged acts of conversion* (i.e. the disposal of the Food Products). In reality, the Food Products were destroyed as a result of the roof collapse and the resulting Notice of Seizure issued by MDARD. Most importantly, this fact is not in dispute. Plaintiff stated in Plaintiff's Memorandum "Eastern Fish could not access its Food Products because the government seized the Food Products from Interstate." *See* PLAINTIFF'S MEMORANDUM at 11 (Document 42). At that point, because MCL §289.2109 mandated the destruction of food as ordered by MDARD, the Food Products were unfit for sale and, therefore, effectively, destroyed.

*Id*., pp. 14-15 (italics added).

Aspen American does not dispute that Michigan state agencies issued orders regarding the food products following the roof collapse, but contends that because Interstate complied with those orders for the purpose of avoiding possible fines or penalties means the products were converted by Interstate to "its own use." According to Aspen American:

Following the roof collapse, the Michigan Department of Agriculture, Food and Dairy Division, visited the Warehouse and seized the Food Products from Interstate. . . . In addition, the Department of Public Health for Ottawa County, Michigan, issued a similar notice related to the seizure order. . . . Eastern Fish could not access its Food Products because the government seized the Food Products from Interstate. . . . Interstate hired its subcontractor to haul the Food Products away from the Warehouse for disposal. . . . Interstate hired Waste Management to dispose of the Food Products. . . . Interstate sent the Food Products to Waste Management for destruction so Interstate could satisfy its obligations to the Michigan Department of Agriculture and . . . Ottawa County[.] . . . Eastern Fish could not access the Food Products from the date of the Roof Collapse to the date of disposal by Interstate.

11

Plaintiff's Response in Opposition (ECF No. 129), pp. 11-12.

Aspen American cites *Aroma Wines* in support of its argument, insisting that the case is applicable (and even dispositive) despite the different factual scenarios. Aspen American claims that because the court in *Aroma Wines* broadened the definition of "own use" to mean "any act of dominion inconsistent with [the owner's] rights in that property," that Interstate committed conversion when it destroyed the Food Products pursuant to the directives of state agencies. Aspen American insists that "there is no suggestion that anyone other than Eastern Fish owned the Food Products. There is no question that Eastern Fish could not obtain its Food Products, or even access the Food Products, after the Roof Collapse, which is unquestionably inconsistent with Eastern Fish's ownership rights. Whether defendant improperly seized the Food Products, or allowed someone else to seize the Food Products, Eastern Fish had the right to Food Products it unquestionably owned." Plaintiff's Response in Opposition (ECF No. 129), p. 19. According to Aspen American, because Interstate's actions in disposing of the Food Products was "inconsistent with Eastern Fish's ownership rights," Interstate therefore committed common law conversion under Michigan law. Furthermore, Aspen American argues that Interstate committed statutory conversion because it "converted" the Food Products to its "own use" when it hired a contractor to haul and destroy the contaminated food after being directed by state agencies to do so. *Id*. According to Aspen American:

> For statutory conversion, plaintiff must also show that the defendant converted the property to its "own use." MCL 600.2919a; *see also*, *Aroma Wines*, 871 N.W.2d at 146.
>
> > Therefore, we agree with the Court of Appeals' definition of "use" and hold that conversion "to the other person's own use" requires a showing that the defendant employed the converted property for some purpose personal to

12

the defendant's interests, even if that purpose is not the object's ordinarily intended purpose.

*Aroma Wines*, 871 N.W.2d at 148. The court held that defendant's act of moving the wine to renovate its temperature-controlled storage area satisfied the "own use" requirement for statutory conversion. *Id.* at 149.

Here, Interstate never had the right to deny Eastern Fish access to the Food Products. Interstate never had the right to subject [the] Food Products to ammonia and temperature damage. Interstate never had the right to allow a third-party to seize the Food Products. Interstate never had the right to destroy the Food Products. Interstate only had the right to store the Food Products and return them to Eastern Fish when directed to do so.

*Id.*

Not so, says Interstate, which argues in its reply brief that:

Under Michigan Compiled Law §§289.2105 and 289.2109, the MDARD has the right to seize any food found to be adulterated and shall order the destruction of the food if it is determined not be a risk of the public health. Additionally, the statute provides that, "[a] person shall not remove or dispose of the food tagged or marked as embargoes or seized, by sale or otherwise, until permission for removal or disposal is given by the director or a court of competent jurisdiction." MCL §289.2105(2). Therefore, by issuing the Notice of Seizure, MDARD asserted a superior right to the Food Products and disposed Eastern Fish of all rights to the Food Products. Therefore, contrary to Plaintiff's assertion that Interstate "never had the right to deny Eastern Fish access to the Food Products", in reality, Interstate's only remedy available to it under the law was to comply with the seizure notice, because MDARD had asserted a superior right over the Food Products.

Defendant's Reply in Support (ECF No. 131), p. 8. Interstate also argues that:

Plaintiff makes a last ditch effort to characterize Interstate's disposal of the Food Products as conversion by providing evidence that Interstate never allowed Eastern Fish access to the Food Products following the roof collapse, and that Interstate hired Waste Management to destroy the Food Products. Thereafter, Plaintiff states, "[i]t is axiomatic that Interstate's destruction of the Food Products was inconsistent with Eastern Fish's rights." . . . However, as discussed above, by issuing the Notice of Seizure, MDARD disposed Eastern Fish of all rights to the Food Products. Accordingly, at the time of the alleged conversion (i.e. the disposal of the Food Products via Waste Management), Eastern Fish had no rights

13

to the Food Products.

*Id*., p. 9. Finally, Interstate insists that it did not commit conversion and that this Court, in its

previous order, said as much:

> In their respective briefs, both parties cite to *Aroma Wines* . . . to address the
> element of "own use" in a common law claim of conversion. In Aroma, the Court
> expanded the meaning of "own use" to mean that the defendant "employed the
> converted property for some purpose personal to the defendant's interests, even if
> that purpose is not the object's ordinarily intended purpose." Id. at 148. The
> parties have previously analogized and distinguished the present matter from
> *Aroma Wines* in prior motion practice in this matter. In the Court's Order and
> Opinion on cross-motions for partial summary judgment dated March 13, 2019,
> the Court accurately summarized Plaintiff's argument with respect to its statutory
> law conversion claim, by stating, "Aspen insists that by destroying Eastern Fish's
> products to fulfill legal duties imposed on it by governmental entities, Interstate
> converted the products to its 'own use,' just as the defendant in *Aroma Wines*
> did." . . . However, the Court clearly disagreed with Plaintiff's argument that
> Interstate's compliance with governmental directives to destroy the contaminated
> Food Products was a "purpose personal to the defendant's interest."
>
> > The only way this argument could be a winning one is if Aspen had
> > authority to support its implied contention that the notices from Michigan
> > state and county authorities directing Interstate to destroy the food products
> > are irrelevant to the analysis. Unlike the defendant in *Aroma*, who made a
> > deliberate choice to move the plaintiff's wine to accommodate defendant's
> > warehouse renovation project, Interstate was mandated by the Michigan
> > Department of Agriculture and the Ottawa County Department of Health to
> > destroy Eastern Fish's seafood after determining that it was potentially
> > contaminated as a result of the roof collapse.
>
> ORDER AND OPINION [DOCUMENT NO. 56] at 30.
>
> In Plaintiff's Response to the present Motion for Partial Summary Judgment,
> Plaintiff realleges that "Interstate intentionally caused the destruction of the Food
> Products to satisfy its obligations to the state of Michigan and local government
> under the Notice of Seizure" and that this was a purpose personal to Interstate's
> interest. See PLAINTIFF'S RESPONSE at 22-23. However, as discussed
> previously by Interstate, compliance with governmental directives was not a
> purpose personal to Defendant's interests. In fact, disposal of the food products
> was not in Interstate's interest, as salvaging the Food Products and preparing them
> for further sale would have been more beneficial to Defendant's interests.

14

Moreover, Plaintiff fails to cite any authority to support its argument that compliance with governmental directives is a purpose personal to a parties' interest for purposes of common law conversion analysis. Additionally, as addressed in this Court's Order and Opinion on cross-motions for partial summary judgment dated March 13, 2019, the alleged act of conversion (i.e. the disposal of the Food Products via Waste Management) was not the proximate cause of the loss for which Aspen seeks to recover.[3] In reality, it was the roof collapse, not Interstate's compliance with governmental agency orders, that was the proximate cause of the loss of the Food Products. Therefore, at the time of the alleged conversion (i.e. the disposal of the Food Products via Waste Management), the Food Products held no value and, therefore, there were no damages as a result of the alleged act of conversion.

Based on foregoing, it is clear that the undisputed evidence precludes any reasonable person from finding that Defendant engaged in statutory conversion under Michigan law and, therefore, Plaintiff's claims of conversion should be dismissed as a matter of law.

Plaintiff's Reply in Support, pp. 9-11.

The following facts are undisputed: just days after the roof collapse the Michigan Department of Agriculture and the Ottawa County Health Department issued their mandates regarding the removal and destruction of the contaminated food; Interstate hired Waste Management to remove the products from the warehouse for disposal pursuant to those mandates; and, at the time of the removal, the Food Products had been destroyed (i.e., rendered non-saleable and non-consumable) when the roof collapsed. Aspen American argues that Interstate "converted" the Food Products when it complied with the state agency mandates because by doing so it exercised dominion over Eastern Fish's (already destroyed) inventory.

---

[3] In its previous Opinion and Order this Court concluded "that Aspen has failed to establish as a matter of law that Interstate committed conversion. Aspen fails to cite any authority to support its argument that Interstate committed conversion when it destroyed the food products after being directed to do so by Michigan state and county authorities. And as Interstate points out, it was the roof collapse, not Interstate's compliance with agency orders, that was the proximate cause of the loss for which Aspen seeks to recover." Opinion and Order (ECF No. 56), p. 31.

And, because Interstate could have faced fines or penalties if it failed to comply with those orders, it thereby converted the Food Products to its "own use." *See* Plaintiff's Response in Opposition (ECF No. 129), p. 22 ("Interstate intentionally caused the destruction of the Food Products to satisfy its obligations to the state of Michigan and local government under the Notice of Seizure."). Based on those arguments, Aspen American insists that Interstate's actions fit the definition of common law and statutory conversion as set forth in *Aroma Wines*.

Aspen American's argument is an attempt to fit a square peg into a round hole. Ignoring the different factual circumstances, Aspen American contends that by removing and destroying the contaminated food in compliance with state agency orders, Interstate's actions were akin to the defendant's actions in *Aroma Wines*, which moved its customer's wine in order to renovate its facility, thereby converting the inventory for its "own use." In *Aroma Wines*, though, the plaintiff's wine was still saleable and consumable at the time it was moved and the defendant was under no legal obligation to move it.[4] Aspen American's argument on the issue of conversion is illogical and reminiscent of the children's nursery rhyme about the old lady who swallowed a fly, then swallowed a spider to catch the fly, then swallowed a bird to catch the spider, and so on. Aspen American's argument is similarly nonsensical. It insists that by negligently allowing or causing the roof collapse, which resulted in the intervention of the Michigan Department of Agriculture and the Ottawa County Health Department, which resulted

---

[4] The only other case Aspen American cites in support of its position is *Rohe Corp. v. National Bank of Detroit*, 350 N.W.2d 280 (Mich.App. 1984) (Plaintiff's Response in Opposition (ECF No. 129), p. 18)), which is even more inapplicable to the present case than *Aroma Wines*, in that *Rohe* involved a third-party (a bank) who asserted a superior lien over the subject inventory (medical equipment) under a security agreement that the Michigan appellate court held was fraudulent. The *Rohe* case is distinguishable and inapplicable for the reasons set forth in Interstate's reply brief (*see* Defendant's Reply in Support (ECF No. 131), pp. 7-8)).

in Interstate hiring Waste Management to remove the Food Products, which resulted in Eastern Fish being deprived of its inventory, Interstate therefore committed conversion. In the end, the undisputed facts in this case, even when all reasonable inferences therefrom are drawn in favor of Aspen American, show that Interstate's actions following the roof collapse did not constitute common law or statutory conversion as those claims are defined under Michigan law and *Aroma Wines*.

There are no factual disputes here requiring resolution by a jury. The parties do not dispute what happened after the roof collapse–that the state agencies ordered the disposal of the Food Products and Interstate complied. The dispute is a matter of law: Interstate says the undisputed facts don't support a claim for either common law or statutory conversion while Aspen American says they do. Aspen American's legal argument is not only illogical, it is unsupported, since *Aroma Wines* and *Rohe* are easily distinguishable. As the Court stated above, "[s]ummary judgment is a critical moment for a non-moving party. It must 'respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial.'" *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018) (quoting *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017)). But when, as here, "it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish [its claim], summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d at 520.

Finally, as to Interstate's argument that any alleged conversion was *not* the cause of Aspen American's damages, given that any damages were incurred as a result of the roof collapse *prior* to the alleged conversion, Aspen American offers no response.

For all of the reasons explained above, Interstate is entitled to summary judgment on Aspen American's claim for common law or statutory conversion under Michigan law.

## CONCLUSION

For the reasons set forth above, the motion to strike filed by Plaintiff Aspen American Insurance (ECF No.117) is DENIED and the motion for partial summary judgment filed by Defendant Interstate Warehousing, Inc., (ECF No. 102) is DENIED in part (as to Plaintiff's gross negligence claim) and GRANTED in part (as to Plaintiff's conversion claim).

Date: July 30, 2021.

 /s/   William C. Lee
William C. Lee, Judge
U.S. District Court
Northern District of Indiana