**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

| | |
|---|---|
| ASPEN AMERICAN INSURANCE CO., ) | |
| as subrogee of Eastern Fish Company, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-CV-383 |
| ) | |
| INTERSTATE WAREHOUSING, INC., ) | |
| ) | |
|   Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court for resolution of numerous pretrial motions. The motions, in the order they were docketed, include the following:

1) Motion in Limine Regarding Trial Issues filed by Defendant Interstate Warehousing, Inc. (ECF No. 105);

2) Motion for Separation of Witnesses filed by Interstate (ECF No. 107);

3) First Motion in Limine to Exclude any Evidence in Support of Defendant's Act of God Defense filed by Plaintiff Aspen American Insurance Co. (ECF No. 108);

4) Second Motion in Limine to Exclude Unauthenticated Climatological or Meteorological Data filed by Aspen American (ECF No. 109);

5) Third Motion in Limine to Exclude Expert Opinions by Persons Who Have Not Been Timely Disclosed filed by Aspen American (ECF No. 110);

6) Fourth Motion in Limine to Exclude Testimony of Witnesses Who Have Not Been Timely Disclosed filed by Aspen American (ECF No. 111);

7) Fifth Motion in Limine to Exclude Reference to Snow Removal Policies filed by Aspen

American (ECF No. 112);

8) Sixth Motion in Limine to Exclude Defendant's Untimely Document Production filed by

Aspen American (ECF No. 113);

9) Seventh Motion in Limine to Preclude Objections to Admission of FEMA Snow Load Safety

Guide Pursuant to FRE 902 filed by Aspen American (ECF No. 114);

10) Eighth Motion in Limine to (I) Preclude Objections to Inferences Made Due to Spoliation of

Evidence & (II) Permit Witnesses to Testify About Spoliated Evidence filed by Aspen American

(ECF No. 115); and

11) Motion to Amend/Correct Seventh Motion in Limine filed by Aspen American (ECF No.

116).

## STANDARD OF REVIEW

The Federal Rules of Evidence do not explicitly authorize in limine rulings. However, a

district court has inherent authority to manage the course of trials. Fed. R. Evid. 103(c); *Luce v.*

*United States*, 469 U.S. 38, 41 n. 4 (1984). District courts have broad discretion in ruling on

motions in limine. *Jenkins v. Chrysler Motors Corp*., 316 F.3d 663, 664 (7th Cir. 2002); *Aldridge*

*v. Forest River, Inc*., 635 F.3d 870, 874-75 (7th Cir. 2011). However, evidence should be

excluded only when inadmissible on all possible grounds. *Hawthorne Partners v. AT & T Techs.,*

*Inc*., 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). As a result, in some instances courts should defer

rulings until trial, particularly where context would be helpful in determining matters such as

relevancy, foundation, and potential prejudice. *See id.* A pre-trial ruling denying a motion in

limine does not automatically mean that all evidence contested in the motion will be admitted at

trial. *Id*. at 1401. And while a pre-trial ruling granting a motion in limine does bar the

2

introduction of certain evidence, trial judges remain free to alter previously issued in limine rulings, within the bounds of sound judicial discretion. *Luce*, 469 U.S. at 41-42.

## DISCUSSION

### I. Motion in Limine Regarding Trial Issues filed by Defendant Interstate Warehousing, Inc. (ECF No. 105).

Interstate Warehousing presents its pretrial issues in a single motion (ECF No. 105) and supporting brief (ECF No. 106), although the issues presented are numerous. Interstate "moves the Court to issue an order in limine prohibiting Plaintiff, its attorneys, and Plaintiff's witnesses from introducing evidence of, making statements concerning, or attempting to convey to the jury in any manner, either directly or indirectly, at any time during the trial of this action, the following:

1. Defendant's financial, economic, or insured status;

2. Settlement agreements or negotiations;

3. A heightened or different standard of care for a bailee/property owner;

4. Evidence of claims of privilege by Defendant;

5. Defendant's failure to call witnesses;

6. Defendant's prior or subsequent acts;

7. The existence of any motion in limine;

8. The suggestion that this litigation is Plaintiff's only opportunity for relief;

9. Evidence for which no foundation is laid, which is not relevant, which was not disclosed in accordance with the Court's orders, and testimony that fails to meet Rule 702 standards;

10. Statements intended to demonize Defendant Interstate Warehousing, Inc. as a company;

11. Claims of negligent hiring, retention, training, and/or supervision of any of Interstate's employees and/or agents.

12. Statements advancing a 'Golden Rule' argument;

13. Testimony, argument, comment or statements advancing Plaintiff's claim that Defendant committed spoliation of evidence outside or beyond the instruction the Court has stated will be read to the jury;

14. Testimony, argument, comment or statements advancing Plaintiff's claim that Defendant was 'grossly negligent';

15. Testimony, argument, comment or statements regarding the limitation of damages clause contained in the warehousing agreement at issue in this case;

16. Testimony, argument, comment or statements implying that the substantive law of any other jurisdiction, other than Michigan Law should apply to this case; and

17. Testimony, argument, comment or statements based on pure speculation and conjecture and are not supported by known facts or evidence."

Defendant's Motion *In Limine*, pp. 1-2. The Court will address each issue in turn.

## A. Defendant's financial, economic, or insured status.

Interstate argues that Aspen American "should be prohibited from introducing into evidence, or conveying to the jury in any manner, Defendant's relative economic or financial status. Such discussion or evidence is inappropriate argument which is presented to sway a jury that the Defendant can afford to pay Plaintiff and can afford a substantial verdict." *Id.*, p. 1 (citing *Igo v. Coachman Industries, Inc. (Sportscoach)*, 938 F.2d 650, 653 (1991)).

Aspen American acknowledges that, as a general rule, evidence of a party's financial,

4

economic, or insured status is not admissible. Nonetheless, Aspen American argues that in this instance Interstate's motion "should be denied in its entirety. All of the 'references' and evidence challenged by the Defendant are entirely germane to matters that are at issue in this case, and therefore all exceed (by a considerable margin) the low threshold needed to establish relevance." Plaintiff's Opposition to Defendant's Motion *In Limine* (ECF No. 128), p. 2. Aspen American contends that while "[Federal Rule of Evidence] 411 states: '[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully . . . the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.' . . . Under this plain language, there are certain circumstances in which Defendant's financial, economic, or insured status would be relevant and admissible. Defendant's blanket, generalized Motion to preclude evidence of its 'financial, economic, or insured status' must therefore be denied." *Id.*, p. 3. Aspen American insists that "[n]one of the cases cited by Defendant in support of this generalized Motion show evidence of insurance as uniformly impermissible." *Id.* In other words, because such evidence *may* become relevant and admissible during trial, Aspen American asks the Court to deny Interstate's motion on this point.

Aspen American is correct that such evidence can be relevant and admissible in certain instances, depending on the evidence and issues presented at trial. But as Interstate argues in its reply brief, the *possibility* that such evidence might become relevant and admissible at trial is not grounds for denying Interstate's motion in limine:

> Interstate is completely surprised at Plaintiff's objection to Interstate's first
> Motion in Limine. While it is true that there may be valid reasons from
> introduction evidence [sic] of a party's financial, economic [or] insurance status at

a trial, none of the reasons exist in this case. Th[e] issues in this case, that being Interstate's culpability in causing or allowing the collapse of the subject warehouse roof, do not appear to necessitate advising the jury about the Interstate's financial, economic or insurance status. As such, those issues should be excluded because they are not relevant to any issue to be tried to the jury in this case. As such, such evidence should be excluded unless, during the course of trial, one of those issues becomes relevant pursuant to Federal Rule of Evidence 402.

Reply in Support of Defendant's Motion *In Limine* (ECF No. 130), pp. 2-3.

The Court agrees with Interstate and GRANTS the motion in limine to preclude evidence of Interstate's financial, economic or insured status. Should this evidence become relevant to an issue during trial, the Court will revisit the matter if raised by a party outside the presence of the jury. This is true of all the Court's rulings since by their nature rulings on motions in limine are preliminary in nature and can be changed or tailored during trial if circumstances warrant. *Ocasio v. Turner*, No. 2:13-CV-303, 2015 WL 13817409, at *1 (N.D. Ind. Sept. 15, 2015).

### B. Evidence of settlement agreements or negotiations.

Interstate's motion in limine includes another common and standard request: to preclude evidence of any settlement negotiations between the parties. Interstate's argument in support of this request is simple and concise:

Federal Rule of Evidence 408 provides, in relevant part:

Evidence of the following is not admissible–on behalf of any party–either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering–or accepting, promising to accept, or offering to accept–a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or a statement made during compromise negotiations about the claim…

Fed. R. Evid. 408. Consequently, any testimony or evidence regarding any

6

attempts to negotiate a settlement of this matter should not be admitted at trial and the Plaintiff should be precluded from making any comments about settlement negotiations before the jury.

Memorandum of Law in Support of Defendant's Motion *In Limine* (ECF No. 106), pp. 2-3.

Again, this is a common and standard pretrial request, as even Aspen American concedes (*see* Plaintiff's Opposition Brief, p. 5: "evidence of settlement agreements or negotiations [is] generally inadmissible."). Still, Aspen American opposes Interstate's motion, arguing that:

A trial court only has power to exclude evidence in limine when the specific piece of evidence is clearly inadmissible on all potential grounds. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). Defendant does not point to any particular evidence of such settlement discussion or negotiations that should be excluded. Apart from the limitations set by Fed. R. Evid. 408, no further limitations on admissibility of evidence in this respect should be applied by this Court.

*Id.*, p. 5. Interstate replies by stating that "Interstate, again, is surprised that Plaintiff stated an objection hereto because such evidence is categorically excluded by the Federal Rules of Evidence. As such, it appears Plaintiff is objecting simply for the purposes of objecting." Defendant's Reply (ECF No. 130), p. 4. Interstate reiterates that Rule 408 expressly excludes such evidence except in very limited circumstances. Interstate argues that "[s]hould one of the exception situations arise in this case, then the appropriate course of action would, again, be to approach the Court outside the presence of the jury to advise the Court of the issue and allow the Court to make a determination as to whether such evidence is more probative than prejudicial and should be presented to the trier of fact." *Id.*, p. 5. Interstate concludes by noting that the parties in this case have engaged in several settlement discussions and negotiations, and that "both parties engaged in these settlement discussions with the belief that the trier of fact would never be advised of the settlement efforts, to include the respective settlement demands and

offers exchanged between the parties. To deny Interstate's Second Motion in Limine would frustrate the entire purpose of F.R.E. 408, which is to facilitate settlement of case without the ramifications of such efforts being used against the party at trial." *Id*. The Court agrees and therefore GRANTS Interstate's motion in limine as to evidence of settlement negotiations.

### C. Evidence of a heightened or different standard of care for a bailee/property owner.

Interstate moves the Court to preclude any evidence "that Interstate was, or should be subjected to, a heightened and/or different standard of care because it was a bailee and the owner of the subject warehouse where Plaintiff's goods were stored at the time of the subject incident." Memorandum of Law in Support of Defendant's Motion *In Limine* (ECF No. 106), p. 3. Interstate argues as follows:

> The duties of a bailee are well settled under Michigan law. Specifically, the Michigan Supreme Court has held that when a bailment is beneficial to both parties (i.e. a mutually beneficial bailment) then the duty of the bailee in keeping the property is "to keep and preserve the property with ordinary care–that care which a prudent man ordinarily takes of his own property." *Godfrey v. City of Flint*, 284 Mich. 291, 297, 279 N.W. 516, 518 (1938). It is clear in this case that the bailment of Plaintiff's goods was a mutually beneficial bailment because Plaintiff need a refrigerated location to store its goods until such time as the goods (frozen seafood) were distributed to costumers. Defendant provided Plaintiff a refrigerated location to store its goods for a fee. As such, Defendant provided Plaintiff with a needed refrigerated storage facility and Plaintiff compensated Defendant for the use of Defendant's refrigerated storage facility. Thus, the facts of this case clearly show that the bailment in this case was a mutually beneficial bailment and Defendants only needed to exercise ordinary care in storing Plaintiff's goods. As such, Plaintiff should not be allowed to introduce evidence, make statements or arguments, or otherwise convey to the jury in any manner that Interstate should be held to a higher standard of care or that Defendant is strictly liable for the incident giving rise to this matter.
>
> Additionally, Defendant anticipates that Plaintiff will attempt to argue or otherwise convey to the jury that FEMA Guidelines, relied on by Plaintiff's snow removal expert Jeremey Swenson, regarding snow and ice removal procedures

> and considerations provided the appropriate standard of care. However, the FEMA Guidelines relied on by Mr. Swenson are not synonymous with industry standards and, further, the FEMA Guidelines themselves disclaim any legal liability or responsibility for the information contained therein. Because of the explicit limitation of the FEMA Guidelines, Plaintiff should not be allowed to argue, or otherwise insinuate, that the FEMA Guidelines create a duty or a legal standard of care. At most, the FEMA Guidelines are, perhaps, evidence of Interstate's alleged negligence. However, allowing Plaintiff to use the FEMA Guidelines to create a standard of care would confuse the jury and be unduly prejudicial to Defendant and should be excluded under Federal Rule of Evidence 403.

*Id*., pp. 3-4.

Aspen American again concedes the general rule regarding the standard of care, but argues that Interstate's motion should be denied on this issue:

> There is no dispute that a bailor-bailee relationship existed between Aspen's insured and Defendant. And there is no dispute that a mutually beneficial bailment, under Michigan law, requires the bailee to keep and preserve the property with ordinary care. *See Godfrey v. City of Flint*, 284 Mich. 291 (1938). Neither of those facts prevents Plaintiff from arguing that Defendant was *grossly negligent* in its handling of Plaintiff's goods.

Plaintiff's Opposition Brief (ECF No. 128), p. 5 (italics in original). Aspen American contends that Interstate "attempts to smuggle an underlying evidentiary issue into this section of its Motion in Limine, alleging that the FEMA Guidelines referenced by Mr. Swenson in his deposition do not reflect the industry standard of care. This is a separate issue that should not be tied into the legal standard applied to the Parties' bailor/bailee relationship. Nonetheless, it is improper and should be denied." *Id*. Aspen American argues as follows:

> Plaintiff addressed the FEMA Guidelines in its own Motion in Limine (Dkt. 114), and those arguments are fully incorporated herein. Defendant is concerned that Plaintiff may seek to utilize the FEMA Guidelines to set separate standards of care. Instead, Defendant suggests that the FEMA Guidelines "[a]t most, […] are, perhaps, evidence of Interstate's alleged negligence." (Dkt. 106 Sec. 3). As the Court knows, bailment law involves a presumption of negligence on the part of

9

the bailee, so such standards apply to bailment claims:

> The mere fact that fires are sometimes spawned by other than negligent conduct is, in our opinion, no reason to eviscerate the general rule. Such is the result if the presumption of negligence is rebuttable by the sole fact that the damage was occasioned by fire.

> Certainly some losses caused by fire or theft may be totally excusable. However, it is equally true that these losses may result from a lack of due care. Because either one of these alternatives is possible we believe that where the bailed property is lost, damaged or stolen, while it was in the exclusive control of the bailee, he should be charged with the burden of going forward to rebut the presumption with evidence to establish that the loss, damage or theft was occasioned without his fault. This may require a defendant-bailee to produce evidence of the actual circumstances surrounding the origins of the fire or the theft, including the precautions taken to prevent the loss.

> *Columbus Jack Corp. v. Swedish Crucible Steel Corp*., 227 N.W.2d 506, 510-511 (Mich.S.Ct. 1975). As Defendant agrees, the FEMA Guidelines may be used as evidence of negligence, which is part of a bailment claim. Section 3 of Defendant's Motion in Limine must therefore be denied.

*Id*., pp. 5-6.

Interstate replies by insisting that Aspen American, not Interstate, is attempting to impose

a different standard of care in this case:

> Plaintiff attempts to defeat Interstate's third Motion in Limine which seeks to prevent Plaintiff from hijacking the standard of care by arguing that the FEMA Guide creates the standard of care in this case. The FEMA Guide Plaintiff seek[s] to utilize[] does not create a legal standard of care and should not be used to do so. Of course, Plaintiff, through its expert witness(s), is free to advise the jury of the contents of the FEMA Guide and what it claims are best practices. However, to claim that the FEMA Guide creates an "industry standard" (i.e. a standard of care in the warehousing industry) goes too far. In fact, the FEMA Guide itself explicitly disclaims its use as an industry standard or a standard of care by disclaiming any legal liability or responsibility for the information contained therein. Therefore, Plaintiff should not be allowed to argue, or otherwise insinuate, that the FEMA Guide create a duty, an industry standard or legal standard of care. *See Gannon v. Menard, Inc*. 2019 WL 7584294 at 7 (S.D.Ind. 2019) (citing *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891 (Ind. 2002)

(holding generally that policy manuals and rules as evidence of a standard of care
is inappropriate).

Defendant's Reply (ECF No. 130), p. 6.

Interstate insists in its motion in limine that Aspen American should be precluded from

arguing that the FEMA Guidelines themselves delineate the applicable standard of care in this

case, while Aspen American insists the Guidelines are admissible to show that Interstate was

negligent. The parties appear to be arguing about an issue on which they both agree: "[T]here is

no dispute that a mutually beneficial bailment, under Michigan law, requires the bailee to keep

and preserve the property with ordinary care. *See Godfrey v. City of Flint*, 284 Mich. 291 (1938)"

(Plaintiff's Opposition Brief (ECF No. 128), p. 5)); "To be clear, the standard of care of Interstate

as a bailee is in this case is the duty to use ordinary care. *Godfrey v. City of Flint*, 284 Mich. 291,

297, 279 N.W. 516, 518 (1938)." Defendant's Reply (ECF No. 130), p. 6. Not only do the parties

agree on the standard of care and cite the same case in support, but Interstate even concedes that

"Plaintiff, through its expert witness(s), is free to advise the jury of the contents of the FEMA

Guide and what it claims are best practices." Interstate is correct. Aspen American can present

the FEMA Guidelines at trial to support its argument that Interstate's conduct leading up to the

roof collapse was negligent or grossly negligent, just as Interstate concedes, but cannot argue that

those Guidelines set the standard of care. Put another way, Aspen American can present the

FEMA Guidelines at trial to support its argument that Interstate was negligent or grossly

negligent in the way it handled (or failed to handle) the snow accumulation, but cannot argue that

Interstate's alleged failure to follow those Guidelines, by itself, requires the jury to find that

Interstate was negligent. Accordingly, Interstate's motion in limine on this point is GRANTED in

part and DENIED in part. The motion is granted in that Aspen American cannot argue that the

FEMA Guidelines set the standard of care in this case (which is one of ordinary care); the motion

is DENIED in that Aspen American can present this evidence at trial in support of its argument

that Interstate was negligent.

### D. Evidence of claims of privilege by Defendant.

Interstate moves the Court to preclude "Plaintiff, its counsel, and Plaintiff's witnesses . . .

from introducing evidence of, making statements or arguments concerning, or conveying to the

jury in any manner any objection by Defendant to certain discovery or any assertion of privilege

by Defendant during pre-trial proceedings in this case." Memorandum in Support (ECF No. 106),

p. 4. Interstate argues as follows:

> Such evidence is irrelevant, highly prejudicial, and, therefore, inadmissible under
> Federal Rules of Evidence 402 and 403. Furthermore, Federal Rule of Evidence
> states that in a civil lawsuit, "state law governs privilege regarding a claim or
> defense for which state law supplies the rule of decision." FED. R. EVID. 501. As
> such this court must apply Indiana law regarding the use of claims of privilege at
> trial. Indiana Rule of Evidence 501(d)(1) holds that, commenting on or attempting
> to draw an inference from a claim of privilege is prohibited. As such, Plaintiff, its
> counsel, and Plaintiff's witnesses should be barred from introducing evidence of,
> making statements or arguments concerning, or conveying to the jury in any
> manner any objection by Defendant to certain discovery requests or any assertion
> of privilege by Defendant during pre-trial proceedings in this case.

*Id*., pp. 4-5.

Aspen American opposes Interstate's motion on this point, arguing that it "is overly broad

and fails to mention any specific piece of evidence here that Defendant wishes to be excluded."

Plaintiff's Opposition Brief (ECF No. 128), p. 7. Aspen American reiterates its argument that "a

trial court only has power to exclude evidence in limine when the specific piece of evidence is

clearly inadmissible on all potential grounds. . . . Here, a blanket motion to preclude 'evidence of

claims of privilege by Defendant' is overly broad and fails to mention any specific piece of

evidence here that Defendant wishes to be excluded. Section 4 of Defendant's Motion in Limine

must therefore be denied." *Id.*, p. 8 (internal citation omitted).

In reply, Interstate contends that Aspen American's objection misses the point:

> Plaintiff objects, again, for reasons that appear to be objection for the sake of objection, to Interstate's fourth Motion in Limine which seeks to prohibit Plaintiff from presenting to the jury any evidence, argument or comment regarding any claims of privilege asserted by Interstate. Oddly, Plaintiff objects by agreeing that claims of privilege should be barred pursuant to Federal Rule of Evidence 501 and state law authority regarding privilege. However, while agreeing that claims of privilege should be barred at trial, Plaintiff then argues that the Court should deny Interstate's Motion in Limine, apparently because the request is too broad. However, to Interstate's knowledge, there were very few claims of privilege asserted in this case. As such, it is readily apparent to Plaintiff what information it cannot divulge to the jury. As such, this Court should prohibit Plaintiff from presenting any evidence, argument or comment to the jury regarding any claim of privilege asserted by Interstate in this case over Plaintiff's objection. *Of course, should an instance arise at trial which may require evidence to be presented regarding a privileged matter, then Plaintiff should raise that issue outside the presence of the jury so that the Court can hear argument and determine if the evidence should be presented to the jury over the claim of privilege.*

Defendant's Reply (ECF No. 130), pp. 6-7 (italics added).

Indiana Rule of Evidence 501(d) provides as follows[1]:

> Except with respect to a claim of the privilege against self-incrimination in a civil case:

---

[1] The parties agree that Indiana state evidentiary rules on privilege apply in this diversity case: *see* Plaintiff's Opposition Brief (ECF No. 128), p. 7 ("Fed. R. Evid. 501 states that in civil cases "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." *See also, Arc Welding Supply Co., Inc. v. American Welding & Gas, Inc.*, 2017 WL 2901230, at *2 (S.D. Ind. May 4, 2017) (noting that "[i]f a case is before the court on diversity jurisdiction, the court must apply state privilege law."); Defendant's Memorandum in Support (ECF No. 106), p. 4 ("Federal Rule of Evidence states that in a civil lawsuit, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501. As such this court must apply Indiana law regarding the use of claims of privilege at trial.").

(1) Neither the judge nor counsel may comment upon the claim of a privilege, whether in the present proceeding or on a prior occasion. No inference may be drawn from the claim of a privilege.

(2) In jury cases, the judge, to the extent practicable, must conduct proceedings so as to allow parties and witnesses to claim privilege without the jury's knowledge.

(3) If requested by a party against whom the jury might draw an adverse inference from a claim of privilege, the court must instruct the jury that the jury must not draw an adverse inference from the claim of privilege.

Ind. R. Evid. 501(d). The language of the rule is clear and Interstate's motion is GRANTED.

Accordingly, *neither* party may introduce evidence of, make statements or arguments concerning, or convey to the jury in any manner any objection by *either* party to certain discovery or any assertion of privilege by *either* party during pre-trial proceedings in this case.

### E. Defendant's failure to call witnesses.

Interstate moves the Court to preclude "Plaintiff, its counsel, and Plaintiff's witnesses . . . from introducing evidence of, making statements concerning, or conveying to the jury in any manner that Defendant failed to call any witness equally available to all parties in this case. Each party has subpoena power consistent with the Federal Rules of Civil Procedure, and any undue comment or reference to the fact that a witness is not called as part of the Defendant's case-in-chief would be irrelevant, highly prejudicial, and, therefore, inadmissible under Federal Rules of Evidence 402 and 403." Defendant's Memorandum in Support (ECF No. 106), p. 5.

Aspen American opposes this request, too, arguing that "[i]nferences due to failure to call certain witness have been permitted in civil cases by Indiana courts." Plaintiff's Opposition Brief (ECF No. 128), p. 8.

In its reply brief, Interstate argues as follows:

> Plaintiff objects to Defendant's fifth Motion in Limine which seeks to prevent
> Plaintiff's counsel from introducing evidence of, making statements concerning,
> or conveying to the jury in any manner that Defendant failed to call any witness
> **equally available to all parties** in this case. Interstate notes that its fifth Motion
> in Limine does not seek to prevent any comment or argument regarding the failure
> to call any witness that was under the exclusive control of Interstate. Again,
> Interstate notes that each party has subpoena power consistent with the Federal
> Rules of Civil Procedure and is free to request any person to appear and testify in
> court. As such, if a witness is one that Plaintiff wants to call at trial, it should not
> be allowed to refuse to call said witness in its case-in-chief on the hopes that
> Defendant will call the witness, only to then make undue comment or reference to
> the fact that Interstate did not call a witness Plaintiff could have easily called.
> Allowing such a tactic would be irrelevant, highly prejudicial, and, therefore,
> inadmissible under F.R.E. 402 and 403.

Defendant's Reply (ECF No. 130), pp. 7-8 (boldface and underlining in original). Interstate's

motion seeks only to bar comments or statements regarding Interstate's failure to call "any

witness equally available to all parties" and is, once again, a standard and common request in

pretrial motions. *United States v. Ogoke*, 860 F.3d 924, 930 (7th Cir. 2017) (holding that a party

may not argue an adverse inference from an opposing party's failure to call a witness, absent a

showing that the witness was available only to that party.").

Accordingly, Interstate's motion in limine on this point is GRANTED. Furthermore, the

Court precludes *either* party from introducing evidence of, or making statements concerning, or

conveying to the jury in any manner, that the other party failed to call a witness that was available

to both.

### F. Defendant's prior or subsequent acts.

Interstate moves the Court to preclude Aspen American from introducing any evidence of

Interstate's prior or subsequent acts, arguing as follows:

> Plaintiff, its counsel, and Plaintiff's witnesses should be prohibited from
> introducing evidence of, making statements or arguments concerning, or

conveying to the jury in any manner any prior or subsequent acts involving Defendant. Federal Rule of Evidence 404(b)(1) provides, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." "It is well settled that prior acts may not be admitted to prove that a person acted in a similar fashion in the case at hand." *Lataille v. Ponte*, 754 F.2d 33, 35 (1st Cir. 1985). Moreover, any such evidence would also be highly prejudicial and, therefore, inadmissible under Evidence Rule 403.

Defendant's Memorandum in Support (ECF No. 106), p. 5.

In response, Aspen American argues again that Interstate's motion should be denied

because it is over broad:

Defendant alleges that its prior or subsequent acts are highly prejudicial and are allegedly inadmissible pursuant to Fed. R. Evid. 403. It provides no support as to why such evidence is highly prejudicial and therefore inadmissible beyond the limiting powers of Fed. R. Evid. 404(b), nor does it provide any statements, arguments, documents, or other specific evidence that it seeks to exclude. Section 6 to Defendant's Motion in Limine is therefore unspecific, overgeneralized, and should be denied as duplicative of what procedural remedies are already available to Defendant under Fed. R. Evid. 403 and 404.

Plaintiff's Opposition Brief (ECF No. 128), p. 9.

Interstate, in its reply brief, once again accuses Aspen American of objecting for the sake

of objecting:

Another surprising objection, which again appears to be an objection for the sake of objection, is Plaintiff's objection to any prior or subsequent acts. Interstate notes that Plaintiff agrees that F.R.E. 404 prohibits the introduction of prior or subsequent acts of Defendant for the purpose of proving that Interstate was negligent with respect to the collapse of the Hudsonville, Michigan warehouse roof, which again leave Interstate pondering why there is an objection at all. At its essence, Plaintiff's argument really appears to take exception to Interstate's position that the evidence would be prejudicial under F.R.E. 403. However, Interstate is not the entity that has made the determination that evidence of prior or subsequent acts is prejudicial. That determination was made by the rules committee which noted that "[prior or subsequent acts are] of slight probative values and may be very prejudicial. [Such evidence] tends to distract the trier of fact from the main question of what actually happened on a particular occasion."

FED R. EVID. 404 cmt. A. As such, the Court should grant Defendant's sixth
Motion in Limine over Plaintiff's objection and bar any evidence pertaining to
prior or subsequent acts of Interstate.

Defendant's Reply (ECF No. 130), p. 8 (capitalization in original).

Federal Rule of Evidence 404 states in relevant part as follows:

(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible
to prove a person's character in order to show that on a particular occasion the
person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as
proving motive, opportunity, intent, preparation, plan, knowledge, identity,
absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1), (2). Again, the language of the rule is clear and Aspen American's

argument that Interstate's request is unspecific and overgeneralized is unavailing. Accordingly,

Interstate's motion in limine on this point is GRANTED and Aspen American, its counsel, and

its witnesses are prohibited from introducing evidence of, making statements or arguments

concerning, or conveying to the jury in any manner any prior or subsequent acts involving

Interstate.

### G. The existence of any Motion in Limine.

Interstate moves the Court to preclude Aspen American from presenting "any testimony,

evidence or reference to the existence or filing of this motion in limine, or to the fact that

Defendants sought to exclude evidence, or to any ruling this Honorable Court has made

regarding this Motion in Limine. The filing of a motion to exclude certain inadmissible evidence,

and the fact that such a motion has been submitted to the Court is inadmissible under Federal

Rule of Evidence 403." Defendant's Memorandum in Support (ECF No. 106), p. 6.

Aspen American responds by arguing that "[a] generalized argument that the mention of

motions in limine is 'inadmissible under Federal Rule of Evidence 403' is too sweeping in scope

to be decided in limine. . . . In the unlikely event that either party chooses to introduce evidence

of pretrial motions in its case in chief, the other side will have the opportunity to object on

applicable evidentiary grounds at trial. Section 6 of Defendant's Motion in Limine is thus overly

broad and must be denied." Plaintiff's Opposition Brief (ECF No. 128), pp. 9-10 (citation

omitted).

> Interstate replies as follows:
>
> Plaintiff also objects, again apparently for the sake of objecting, to Interstate's
> seventh Motion in Limine seeking to prevent Plaintiff from advising the jury of
> the existence of the parties' respective Motions in Limine. However, Plaintiff's
> objection, that Interstate's Motion in Limine is too broad fails to state what is
> actually objectionable. Interstate asks this Court to prevent Plaintiff from
> mentioning the existence of its motion in limine, or the order ruling on
> Defendant's Motion, at trial. In fact, Plaintiff's argument for its objection is not
> cogent because Plaintiff agrees that a party should object to the introduction of
> pre-trial motions at trial. As such, there appears to be no legitimate objection and
> the Court should grant Interstate's seventh Motion in Limine and prevent Plaintiff
> from advising the jury about the existence of this Motion in Limine.

Defendant's Reply (ECF No. 130), p. 9.

The purpose of a motion in limine is to obviate the need for a party to object to evidence

in the presence of the jury. Thus, Aspen American's argument that Interstate's motion in limine

should be denied because Interstate would have the right to object to any attempt by Aspen

American to introduce evidence that Interstate filed motions in limine, once again, misses the

point. Motions in limine are supposed to streamline, not complicate, evidentiary issues.

Interstate's request is common and reasonable and is GRANTED. *Neither* party will be permitted

to present any testimony, evidence or reference to the existence or filing of any motion in limine,

or to the fact that the other party sought to exclude evidence, or to any ruling this Court has made

regarding any motion in limine.

  **H. The suggestion that this litigation is Plaintiff's only opportunity for relief.**

  Interstate moves the Court to preclude "Plaintiff and Plaintiff's counsel [from] suggest[ing] or argu[ing] to the jury that Plaintiff's only chance to receive compensation for its alleged damages lies with the jury in this litigation." Defendant's Memorandum in Support (ECF No. 106), p. 6. Interstate argues as follows:

> The suggestion is irrelevant to the issues the jury must decide in this case and will unfairly arouse the jury's sympathy for Plaintiffs. In *Stillman v. Norfolk & Western Railway Co.*, the Court rejected a plaintiff's claim that his counsel should have been permitted to inform the jury that plaintiff would receive no worker's compensation benefits because he was limited to recovery under the Federal Employers' Liability Act. 811 F.2d 834, 838 (4th Cir. 1987). The court held that plaintiff's ineligibility for worker's compensation was completely irrelevant to the issues presented in the case and allowing the jury to consider such information could have prejudiced the railroad. *Id*. at 838. *See also*, *Weinell v. McKeesport Connecting Railroad Co.*, 411 F.2d 510, 512 (3rd Cir. 1969).
>
> Where the only purpose for injecting irrelevant evidence into a trial is to improperly sway the jury in a particular party's favor, such evidence should be expressly prohibited. *Id*.; Fed. R. Evid. 403. Any suggestion that this lawsuit is Plaintiff's sole source of compensation for Plaintiff's alleged damages would undoubtedly generate sympathy for the Plaintiff and prejudice Interstate. Thus, Plaintiff should not be permitted to argue or insinuate that this trial is its only chance to receive compensation for its alleged injuries. Such a claim is misleading, entirely irrelevant, and unduly prejudicial to Defendant and must be barred pursuant to Federal Rule of Evidence 403.

*Id*., pp. 6-7.

  In response, Aspen American claims the cases Interstate cites in support of its argument are inapplicable, then again argues that Interstate's motion should be denied because Interstate does not cite any specific evidence it seeks to exclude and because Interstate is free to object at trial:

> Plaintiff should be afforded the opportunity to present its prima facie case to the jury by whatever means it chooses to under the Federal Rules of Evidence. As previously established, a trial court only has power to exclude evidence in limine when the specific piece of evidence is clearly inadmissible on all potential grounds. . . . Defendant fails to mention any specific piece of evidence here, and is free to frame this motion, if applicable, as a proper objection during trial. At this juncture, Section 8 of Defendant's Motion in Limine must be denied.

Plaintiff's Opposition Brief (ECF No. 128), p. 10.

In reply, Interstate argues that Aspen American is opposing its motion in limine on this point because "Plaintiff clearly . . . intends to plead to the sympathy of the jurors to prevail in this case. In fact, Plaintiff has no choice but to do so because Plaintiff is desperate to convince the jury that Interstate was grossly negligent in causing the collapse." Defendant's Reply (ECF No. 130), p. 9.

In sum, Aspen American objects to Interstate's motion on the grounds that it is over broad and premature, while Interstate argues that Aspen American is attempting to clear a path to appeal to the sympathy of the jury. The Court is not moved by either argument, but will grant the motion anyway because any statements, comments or arguments that this case is Aspen American's only change to recoup its alleged damages is irrelevant and unduly prejudicial. Accordingly, the motion is GRANTED and Aspen American's counsel and witnesses are precluded from mentioning or arguing to the jury that Plaintiff's only chance to receive compensation for its alleged damages lies with the jury in this litigation.

### I. Evidence for which no foundation is laid, which is not relevant, which was not disclosed in accordance with the Court's orders, and testimony that fails to meet Rule 702 standards.

Interstate moves the Court to preclude "Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses . . . from introducing evidence for which no foundation is laid, which is not relevant to

the issues in this action, and which was not disclosed in accordance with the Court's orders."

Defendant's Memorandum in Support (ECF No. 106), p. 7. Interstate argues as follows:

> The Rules of Evidence require Plaintiff to show that their witnesses have personal knowledge of the matters to which they are testifying, FED. R. EVID. 602, and that the evidence they present is what they purport it to be. FED. R. EVID. 902(a).

> Additionally, evidence that does not have any tendency to make a fact more or less probable than it would be without the evidence is not relevant and, therefore, not admissible at trial. FED. R. EVID. 401, 402. Further, any evidence not disclosed in accordance with the Court's Case Management Order must be barred at trial absent a showing of good cause for its admission notwithstanding its untimely disclosure. If the evidentiary prerequisites of a proper foundation, relevance, and timely disclosure have not been satisfied, Plaintiffs' evidence should be barred at trial.

> Additionally, Federal Rule of Evidence 702, along with *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny, govern the admissibility of expert evidence. *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 741 (7th Cir. 2007). *Daubert* requires the Court to safeguard that expert testimony is both relevant and reliable by acting as a "gatekeeper" when such evidence is proffered. *Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238, (1999). In *Kumho Tire*, the Supreme Court noted that Rule 702 did not differentiate between "scientific" knowledge and any other forms of specialized knowledge. *Id*. at 149. Thus, *Kumho Tire* extended *Daubert*'s relevance and reliability requirements, such that they apply to all expert testimony and not merely to scientific testimony. *Id*. at 137.

> In light of *Daubert* and *Kumho Tire*, the Seventh Circuit adopted a two-step methodology to help district courts determine whether an expert's testimony satisfies Rule *702. Bamcor, LLC v. Jupiter Aluminum Corporation*, 767 F.Supp.2d 959, 973 (N.D. Ind. Feb. 7, 2011). First, the Court must satisfy the reliability requirement by determining that: (1) the proffered expert is qualified in the applicable field; and (2) the opinion is founded on sound methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). When analyzing an expert's qualifications to offer an opinion, the Court should consider the expert's "full range of practical experience as well as academic or technical training. . . ." *Id*.

> In this case, Defendant anticipate[s] that Plaintiff will attempt to introduce expert testimony that does not meet the criteria laid out by *Daubert* and its progeny. Specifically, it is anticipated that Plaintiff will attempt to introduce evidence and

testimony from James Goes, Plaintiff's structural engineering expert, who is anticipated to opine that the subject collapse was not caused by the enormous amount of snowfall, but was instead caused by an alleged joist connection failure. However, as admitted by Mr. Goes, his "opinion is based on extremely limited information" and is made "with very low certainty." Based on Mr. Goes' own statements, his purported expert opinions do not meet the exacting standard for admission set out in *Daubert* and its progeny. More specifically, Mr. Goes' purported opinion is not founded on sound methodology as admitted by Mr. Goes himself because his opinions are based on "extremely" limited information and are made with "very low" certainty. *Ford Motor Co.*, 215 F.3d at 718. Therefore, because Mr. Goes' opinions do not meet the exacting standards for admissibility as set forth in *Daubert* and its progeny, his opinions are not admissible under Federal Rule of Evidence 702 because they will not help the trier of fact, are not based on sufficient facts or data, and are not the product of reliable principles and methods. See FED. R. EVID. 702.

Mr. Goes' opinions are also not admissible because his opinions are nothing more than mere speculation or conjecture. Mr. Goes admits that he never actually inspected the joist he claims failed and caused the subject collapse. As such, Mr. Goes' opinions are not based on any known or provable fact, making his joist failure opinion nothing more than guess (i.e. conjecture). *Skinner v. Square D. Co.*, 516 N.W.2d 475, 480-481 (Mich. 1994). Therefore, this Court must not allow Plaintiff, Plaintiff's counsel, Mr. Goes, or another of Plaintiff's other witnesses to testify, comment or introduce any evidence which indicates that the subject roof collapse was caused by an unverifiable joist failure.

*Id.*, pp. 7-9.

Aspen American responds by arguing that Mr. Goes is qualified to testify as an expert in this case and that Interstate's motion to exclude his testimony is based on a mischaracterization of his expected testimony. Plaintiff's Opposition Brief (ECF No. 128), pp. 10-13.

The Court need not address the parties' arguments on this point because the issue is the weight to be given to Mr. Goes' testimony, not its admissibility. If, as Interstate contends, Mr. Goes' testimony is based on speculation and conjecture, Interstate can establish that through cross-examination and presentation of its own expert. At this juncture, however, Interstate's motion in limine on this point is DENIED.

**J. Statements intended to demonize Defendant Interstate Warehousing, Inc. as a company.**

Interstate moves the Court to preclude "Plaintiff, its counsel, and Plaintiff's witnesses . . . from making statements intended to demonize Interstate as a warehousing company. Whether made during Plaintiffs' opening statement, case-in-chief, or closing argument, such statements could only serve to inflame the passions of the jury and unfairly prejudice Interstate. Such statements and arguments are, therefore, barred by Federal Rule of Evidence Rule 403." Defendant's Memorandum in Support (ECF No. 106), p. 9.

Not surprisingly, Aspen American opposes this request also. Aspen American insists as follows:

> In its three-sentence argument in Section 10 of its Motion in Limine, Defendant fails to tell this Court what it means by "demonize Defendant Interstate Warehousing Inc. as a company." This is not a legal standard, but a subjective phrase. It tends to show that Defendant is worried that its grossly negligent behavior and its spoliation of evidence may make it look unfavorable in the eyes of the jury. But this is the bed Defendant made; it now must lay in it.

> As previously established, a trial court only has power to exclude evidence in limine when the specific piece of evidence is clearly inadmissible on all potential grounds. . . . Defendant once again fails to mention any specific piece of evidence here. At this juncture, Section 10 of Defendant's Motion in Limine must be denied.

Plaintiff's Opposition Brief (ECF No. 128), p. 13.

In reply, Interstate argues as follows: "[I]n Plaintiff's objection to Interstate's tenth Motion in Limine, Plaintiff states, in relation to its purported gross negligence claim, which is clearly not supported by any fact, that Interstate made its bed and 'must lay in it.' This statement clearly underscores the need for the Court to issue an order in limine which directly prevents Plaintiff, Plaintiff's counsel and/or Plaintiff's witnesses from making any statements which

demonize or disparage Interstate as a company at trial." Defendant's Reply (ECF No. 130), pp. 12-13.

Whether the evidence causes the jury to think poorly of Interstate is of no moment to the Court. That said, comments or statements by Aspen American's counsel or any of its witnesses that are intended to disparage or "demonize" Interstate are not evidence, and those are the types of comments Interstate seeks to exclude. Interstate's request is reasonable and well-taken and its motion in limine on this point is GRANTED.

### K. Claims of negligent hiring, retention, training, and/or supervision of any of Interstate's employees and/or agents.

Interstate moves the Court to preclude "Plaintiff, Plaintiff's counsel, and Plaintiffs' witnesses . . . from making any claims of negligent hiring, training, supervision, and/or retention of any of Interstate's employees and/or agents." Defendant's Memorandum in Support (ECF No. 106), p. 9. Interstate states that it "has admitted, or will admit, that all of Interstate's employees and agents involved in the issues being litigated in this case were acting in the course and scope of their employment with respect to the alleged acts or omissions Plaintiff has asserted against Interstate." *Id*. Interstate cites several cases in support of the proposition that "no independent claim of negligence shall lie against an employer for negligent hiring, training, supervision, or retention where the employer has stipulated that the employee was acting in the course and scope of his employment with the employer when the alleged incident occurred." *Id*., p. 10 (citations omitted). Interstate then pivots a bit to a separate evidentiary issue by arguing that Aspen American should be precluded from presenting evidence of Interstate's employees' employment and training files:

> Furthermore, Plaintiff should be barred from introducing any evidence related to any employee's or agent's employment or training files because such files and documents are irrelevant, highly prejudicial, and do not tend to make a fact at issue more or less true under the circumstances of this case since Interstate has admitted, or will admit, that its employees and agents involved in the subject warehouse collapse, including those who were involved all pre-collapse activities and inspections, were acting within the course and scope of their employment when the subject incident occurred. Therefore, evidence regarding any of Interstate's employees and/or agents employment and training files are not relevant to any triable issue in this case and are inadmissible under Federal Rules of Evidence 402 and 403.

*Id.*, pp. 10-11.

Aspen American responds by first noting that it *has not alleged* any claim for negligent hiring, training or supervision. But Aspen American argues that it should be permitted to present evidence that Interstate's employees were not adequately trained. Aspen American argues as follows:

> Defendant asserts that . . . no independent claim of negligence shall be made against an employer for negligent hiring, training, supervision, or retention. *Plaintiff has no direct claim for negligent hiring, training, supervision, or retention against Defendant.* Defendant also wrongly argues that Plaintiff should be barred from introducing evidence related to any employee's or agent's employment or training files due to supposed lack of relevance or highly prejudicial nature but fails to explain why this evidence is highly prejudicial or irrelevant. Defendant incorrectly alleges that evidence of an employee's employment and training materials is not relevant to any triable issue in this matter under Fed. R. Evid. 402 and 403. Defendant's employees' employment records and training materials are directly relevant to the duty and breach elements of Plaintiff's negligence and gross negligence claims. Gross negligence is found when "conduct is so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Xu v. Gay*, 668 N.W.2d 166, 170 (Mich. App. 2003). The jury, as factfinder, could easily conclude that Defendant's complete lack of training materials available to its employees for snow incidents such as the one that resulted in the damages to Plaintiff's goods rises to the level of gross negligence.
>
> It also follows, then, that the method of Defendant's employees' work and training could show how Defendant's employees breached their duty to Plaintiff through

> the manner of their training and work as warehousemen. Evidence of their work and training materials directly shows that Defendant's complete disregard for training or educating its employees amounted to a "substantial lack of concern for whether an injury results." *Xu*, 668 N.W.2d at 170. Indeed, no one at the subject warehouse had a background or received training related to building construction, roofing work, snow removal or building maintenance. Dkt. 41-6, p. 39-40; p 73, li. 11 to p. 74, li. 7. Defendant's employees' work records and training are clearly relevant in this matter and should be admissible at trial of this matter.

Plaintiff's Opposition Brief (ECF No. 128), pp. 13-14. It goes without saying that Aspen American cannot present any argument or evidence in support of a nonexistent claim. But the real issue here is whether Aspen American can present evidence of Interstate's employees' training and whether those employees were capable and competent to handle the situation involving the warehouse roof. This evidence is relevant to Aspen American's negligence and gross negligence claims and is admissible in that context.

Accordingly, Interstate's motion in limine on this point is GRANTED to the extent that Aspen American will be precluded from presenting evidence or argument that Interstate is liable for negligent hiring, retention or supervision–claims that Aspen American admits it does not assert–and DENIED to the extent that Interstate seeks to preclude Aspen American from presenting evidence of Interstate's employees' background and training. As stated, this evidence is relevant to Aspen American's claims and Interstate's objection goes to the weight to be accorded that evidence rather than its admissibility.

### L. Statements advancing a "Golden Rule" argument.

Interstate moves the Court to preclude "Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses . . . from introducing evidence, making statements concerning, or conveying to the jury in any manner that the jury should imagine itself in the Plaintiff's position and render a verdict in

Plaintiff's favor because doing so will make the community safer and will prevent Defendant

and/or others similarly situated as Defendant from harming the jurors, the jurors' families, or

someone close to the jurors. These so called "Golden Rule" arguments are "universally

recognized as improper because [they] encourage[] the jury to depart from neutrality and to

decide the case on the basis of personal interest and bias rather than on the evidence." . . .

Accordingly, such arguments are highly prejudicial and therefore inadmissible under Federal

Rule of Evidence 403. Defendant's Memorandum in Support (ECF No. 106), p. 11 (citations

omitted). Interstate elaborates as follows:

> Allowing Plaintiff to make any argument, mention, or elicit testimony which is designed to sway the jury away from its role as a neutral arbiter in this case is misconduct which would play to large of a role in the outcome and could not be cured by asking the jury to remain neutral. The only way to ensure a fair trial for both parties is to prevent Plaintiff from asking, mentioning, or introducing any testimony, argument or evidence which may seek to have the members of the jury to abandon there [sic] duty to remain neutral.
>
> . . .
>
> Additionally, it is anticipated that Plaintiffs' counsel will, throughout the course of trial, argue that the jury has the power to improve the safety of themselves, their family members, and their community by rendering a verdict that will reduce or eliminate allegedly "dangerous" or "unsafe" conduct.

*Id.*, pp. 11-12. Interstate then presents a lengthy discussion of the "Golden Rule" and "Reptile"

theories, which Interstate says supports its motion. According to Interstate, the "'reptilian

imperative' or 'reptile tactic,' is based on a book by David Ball and Don Keenan entitled

'Reptile: The 2009 Manual of the Plaintiff's Revolution' and seeks to convince the jury that a

verdict for the plaintiff will make the community safer because it will prevent the defendants or

others similarly situated from harming the jurors, their families, or someone close to them. This

argument needs to be recognized for what it truly is–an attempt to resurrect 'Golden Rule'

arguments.'" Defendant's Memorandum in Support (ECF No. 106), p. 12. Interstate then devotes

seven pages, nearly a third of its memorandum, to a law review type discussion of the "Golden

Rule" and "Reptilian Complex" theories as presented in Mr. Ball's and Mr. Keenan's book, and

why such arguments should not be permitted at trial. *Id*., pp. 11-17.

> Aspen American's response, in its entirety, is as follows:

> Despite using 2,100+ words to explain and argue the "Golden Rule" and "Reptile" theories in its Motion in Limine Section 12, Defendant fails to devote even one of those words to a specific piece of evidence that it seeks to exclude in limine.

> Once again, a trial court only has power to exclude evidence in limine when the specific piece of evidence is clearly inadmissible on all potential grounds. . . . Despite its longwindedness, Section 10 of Defendant's Motion in Limine is vague, overly broad, and must be denied.

Plaintiff's Opposition Brief (ECF No. 128), p. 15.

In its reply brief, Interstate argues that all it is asking the Court to exclude are comments

or statements to the jury implying that they should find in favor of Aspen American and award

damages because doing so would protect the jurors or other people from the dangers of

improperly stored food products. Interstate argues that such comments or statements "seek[] to

draw the jury away from logic and reason and base their determination of the case on fear and

emotion." Plaintiff's Reply (ECF No. 130), p. 15.

The Court agrees with Interstate and GRANTS the motion in limine on this point.

"Golden Rule" and "Reptile Complex" theories aside, what Interstate is asking for in its motion

in limine is an order precluding Aspen American from making comments or statements to the

jury, explicit or implied, that are intended to appeal to the jury's fear or emotion as outlined in

Interstate's memorandum. Such statements or comments are wholly inappropriate and improper and the Court will not tolerate them, whether they are called "Golden Rule" arguments or "Reptilian Complex" arguments or "Please Find in Our Favor Because Defendant is Mean" arguments. Accordingly, Interstate's motion in limine is GRANTED on this point.

### M. Testimony, argument, comment or statements advancing Plaintiff's claim for spoliation of evidence outside or beyond the instruction this Court has stated will be read to the jury.

Interstate moves the Court to preclude "Plaintiff, Plaintiff's counsel and Plaintiff's witnesses . . . from mentioning, arguing or commenting on the alleged **spoiliation** of evidence committed by Defendant." Defendant's Memorandum, pp. 18-19. This Court ruled in a previous order that Interstate committed spoliation of certain evidence following the roof collapse and that the Court would give an instruction informing the jury that it could, but was not required to, find that the evidence destroyed by Defendant's pursuant to local health authority orders was unfavorable to Defendant. *See* Opinion and Order (ECF No. 75), pp. 18-19 ("The Court will provide a preliminary and final jury instruction that the jury may, but is not required to, conclude that evidence that might have been obtained from an inspection of the warehouse components removed from the site would have been unfavorable to Interstate. . . . The jury will be permitted to hear and consider evidence from both parties about Interstate's failure to preserve the structural components (or make them available for inspection) and how and to what degree Aspen American was prejudiced by Interstate's actions in that regard. . . . The Court reserves the right to alter the wording to, and supplement, the preliminary and final jury instruction and to impose other sanctions for spoliation before or during trial, if appropriate.").

Interstate argues that a jury instruction is all that is needed and that Aspen American

29

should be precluded from arguing or even mentioning that Interstate spoliated evidence.

According to Interstate:

> After the roof collapse giving rise to this litigation, Plaintiff requested that one of its experts inspect the roof collapse site to inspect, in part, the roof joist where the subject collapse occurred. Plaintiff's expert made numerous attempts to inspect the collapse site but purportedly could not see the part of the roof he desired to inspect. Ultimately, state and local health departments directed Defendant to remove the debris, destroy Plaintiff's contaminated product, and remove the "harborage" from the area. Defendant notified Plaintiff about the orders from the state and local health departments. After a sufficient time, but before the deadline imposed by the health departments, Defendant destroyed the contaminated product, cleared the collapse debris and removed the harborage as directed by state and local health officials and destroyed the collapsed roof materials. Defendant anticipates that, at trial, Plaintiff will argue, comment, or otherwise insinuate that Defendant's intentionally spoiliated [sic] evidence for the sole purpose of attacking the character of Defendant and implanting in the minds of the jury that Defendant is deceitful, fraudulent, or attempted to cover up its negligence in this case. However, Plaintiff should be prevented from arguing, mentioning, or otherwise commenting on the alleged spoliation of evidence in this case pursuant to Federal Rule of Evidence 403.

> Plaintiff's spoliation of evidence claim has already been presented and addressed by this court in Plaintiff's Motion for Summary Judgment regarding Plaintiff's claim that Defendant's spoliated evidence. After reviewing the arguments and designated evidence, the Court determined that Defendant's actions did technically meet the definition of spoliation of evidence. However, the Court also noted that Defendant was placed between "a rock and a hard place" because it was faced with Plaintiff's preservation of evidence letter demanding that Defendant preserve the warehouse structure for inspection and directives from state and local authorities to remove and destroy the very same evidence Plaintiff requested be preserved. Ultimately, Defendant was forced to comply with health department authorities directives. Thus, this Court found that Defendant's spoliation of evidence was not a deliberate attempt by Interstate to squirrel away evidence in an effort to prevent Aspen American from conducting an inspection and investigation into the cause of the roof collapse. Accordingly, the Court determined that it would give an instruction informing the jury that it could, but was not required to, find that the evidence destroyed by Defendant's pursuant to local health authority orders was unfavorable to Defendant.

> If Plaintiff is permitted to comment, argue or otherwise mention throughout the trial that Defendant spoliated evidence, it would leave the impression with the

members of the jury that Defendant's actions were intentional and deliberate and an attempt to destroy unfavorable evidence. Such a result would unduly and substantially prejudice the Defendant at trial and create a clearly unfair benefit to Plaintiff, especially when considering Plaintiff's purported gross negligence claim.

Therefore, Plaintiff, Plaintiff's counsel and Plaintiff's witnesses should be prohibited from mentioning, arguing or commenting on the alleged spoiliation [sic] of evidence committed by Defendant pursuant to Federal Rule of Evidence 403, and the only mention of spoiliation [sic] of evidence at trial should come from the Court's previously approved jury instruction as stated in the Court's summary judgment order.

Defendant's Memorandum (ECF No. 106), pp. 17-19.

Aspen American responds by contending that Interstate is attempting to preclude Aspen American from presenting any evidence or argument regarding spoliation even though this Court has already ruled that such evidence and argument would be permitted. According to Aspen American:

Defendant here attempts to have its cake and eat it too: impermissibly destroy the evidence, and then prevent the jury from drawing negative inferences from that improper conduct. In fact, Defendant goes a step further, moving this Court to completely bar Plaintiff from even referencing Defendant's sanctioned conduct, seeking to pretend as though no evidence ever existed and that the Court's Order (Dkt. 75), is somehow superfluous. Such request is not based in law.

Defendant alleges that because this issue has already been addressed by the Court, it does not need to be addressed further. This is not so. The Court's Order of December 5, 2019, (Dkt. 75), offered the following:

The jury will be permitted to hear and consider evidence from both parties about Interstate's failure to preserve the structural components (or make them available for inspection) and how and to what degree Aspen American was prejudiced by Interstate's actions in that regard.

Dkt. 75, p. 18.

To pretend as though spoliation is not relevant would result in jury instructions without a reason. Defendant is attempting to maximize its benefit from having

31

spoliated evidence while reducing any possible negative inferences that may be drawn from such actions. This defeats the purpose of a determination of spoliation of evidence and should not be granted.

Plaintiff's Opposition Brief (ECF No. 128), pp. 15-16.

Interstate replies by reiterating its position that an instruction regarding spoliation, which the Court indicated it would give to the jury, is all that is necessary to ensure that Aspen American's spoliation argument is presented to the jury and that argument or evidence on that point would be unduly prejudicial. According to Interstate:

> Predictably, Plaintiff argues that the Court's sanction is not enough. Plaintiff wants to deny Interstate all opportunity to present a defense in this matter in order to present Plaintiff's position and turn what is a minor sanction into the crux of the case and prevent Interstate from receiving a fair trial. Of course, Plaintiff is free to notify the jury that Mr. Goes was not able to perform all of the inspection activities he wanted to perform because the components were removed. Mr. Goes is also free to testify about what evidence he would have been looking for if he would have performed the inspection he wanted to perform. However, that is as far as Plaintiff's evidence should be permitted to go. To allow Plaintiff to go further would be to impose a more harsh sanction on Interstate than the Court deemed was warranted under the circumstances, would severely prejudice Interstate at trial, and would ensure that Interstate does not receive a fair trial. As such, the Court must limit Plaintiff's presentation of evidence and its references to the word "spoliation" and the negative connotation that would surely be carried with it.

Defendant's Reply (ECF No. 130), pp. 16-17.

Interstate's concern about the negative connotation of the word spoliation and the impact that evidence of spoliation might have on the jury is understandable; but it goes with the territory. As Aspen American points out, the Court has already addressed the issue of spoliation, concluded that Interstate did commit spoliation, and expressly held that both parties would be permitted to present evidence on this point and that an appropriate jury instruction would be provided to the jury. The Court did *not* hold that Aspen American would be precluded from

presenting any evidence or argument on the issue of spoliation. Accordingly, Interstate's motion

in limine is DENIED on this point.

### N. Testimony, argument, comment or statements advancing Plaintiff's claim that Defendant was "grossly negligent."

Interstate moves the Court to preclude Aspen American from presenting evidence or

argument on its claim for gross negligence, arguing as follows:

> Interstate anticipates that Plaintiff, its counsel, or Plaintiff's witnesses will attempt
> to argue, suggest, or make comment that Interstate was grossly negligent in this
> matter. However, Plaintiff, its counsel and Plaintiff's witnesses should not be
> allowed to argue, suggest, and or make any comment regarding Plaintiff's belief
> or claim that Interstate was grossly negligent in this case. Plaintiff's sole purpose
> for asserting a gross negligence claim in this case is because Plaintiff is seeking to
> avoid the limitations of damages clause which was a part of the Warehouse
> Contract between Plaintiff's insured and Defendant.

Defendant's Memorandum (ECF No. 106), p. 19.

In response, Aspen American insists that this section of Interstate's motion in limine is an

improper attempt to preclude evidence of a claim that this Court has already ruled must be

presented to a jury. Aspen American argues as follows:

> The primary claim of Plaintiff's case in chief can be summarized in one simple
> point that the jury must decide: whether the warehouse roof collapse was the
> result of Defendant's gross negligence. To somehow seek to prevent Plaintiff
> from presenting the lynchpin issue in its case is bizarre, flawed on its face,
> unfounded in relevant case law, and must be denied.
>
> Defendant alleges that this evidence would somehow be prejudicial. This is a
> clear tactic to attempt to avoid permitting the jury to find that Defendant was
> grossly negligent. If successful, Defendant theorizes it would then be shielded by
> alleged contractual limitations. The fear that the jury would not be able to
> distinguish between the threshold of gross negligence and ordinary negligence is
> baseless. This Court recognized the issue squarely when ruling on the parties'
> summary judgment motions: "Genuine issues of material fact preclude a finding
> that the limitation clause is enforceable as a matter of law. Fact issues exist
> concerning the reasonableness of Interstate's actions, i.e., whether they constituted

gross negligence, and so Interstate is not entitled to summary judgment on the issue of its ability to limit its liability." (Dkt. 56, p. 19). "The issue of Interstate's alleged gross negligence must be determined by a jury. . . ." *Id*. at p. 27.

Plaintiff's Opposition Brief (ECF No. 128), pp. 16-17 (citing and quoting Court's March 13, 2019, Opinion and Order (ECF No. 56)). Aspen American insists that "it is for the jury to decide whether Defendant's conduct rose to the level of gross negligence." *Id*., p. 17. Interstate's reply reiterates its argument that a jury instruction is all that is needed to present the issue of gross negligence to the jury and that no evidence on that point is needed (and that admitting it would unduly prejudice Interstate).

Aspen American is correct that Interstate's request is bizarre, especially in light of this Court's prior rulings on the issue of gross negligence. The issue is one for the jury to decide and the jurors must hear evidence in order to do so. Interstate's motion in limine on this point amounts to a disguised motion for partial summary judgment, since Interstate argues that its actions did *not* amount to gross negligence as that term is defined by Michigan law. But as Aspen American points out, this issue has already been addressed and decided. Accordingly, Interstate's motion in limine on this point is DENIED.

> **O. Testimony, Argument, Comment or Statements regarding the limitation of damages clause contained in the warehousing agreement at issue in this case.**

Interstate moves the Court to preclude "Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses . . . from mentioning, arguing, testifying or otherwise informing the jury about the limitation of damages clause contained in the warehousing agreement between the parties pursuant to Federal Rule of Evidence 403." Defendant's Memorandum (ECF No. 106), p. 21. Interstate argues as follows:

On April 23, 2013, Plaintiff's insured and Defendant entered into a warehousing contract. The warehousing contract contained an explicit limitation of damages clause which limited Defendant's liability if Plaintiff's stored goods were damaged while stored in Defendant's warehouse. . . .

First, the fact that there was a limitation of damages clause is not relevant to any issue in this case. There is no dispute that the limitation of damages clause exists in this case, that the clause is applicable if Defendant is found to be negligent, and that the clause is not applicable if Defendant is found to be grossly negligent for the warehouse collapse at issue in this case. Accordingly, the only issue that the jury needs to determine is if the subject roof collapse was an Act of God under Michigan law, whether Defendant was negligent and such negligence was the proximate cause of the roof collapse, or, if Defendant was negligent, did Defendant's actions amount to gross negligence. The limitation of damages clause has no bearing weather [sic] o[r] not Defendant was negligent (or grossly negligent) or not [sic]. As such, the limitation of damages clause is not relevant pursuant to Federal Rule of Evidence 402 and such evidence should be excluded at trail.

Additionally, Defendant anticipates that Plaintiff will attempt to introduce the limitation of damages clause at trial because of Plaintiff's claim of gross negligence. As noted by the Court during summary judgment proceedings, if Defendant is found to have been simply negligent, then the limitation of damages clause in this case will limit Plaintiff's recovery. However, if Plaintiff can convince the jury that Defendant was grossly negligent in preventing the warehouse roof collapse, then the limitation of damages clause will not affect Plaintiff's recovery. As such, by mentioning the limitation of damages clause, which is irrelevant to Defendant's alleged negligence, Plaintiff can attempt to inflame the passion and sympathy of the jury and prejudice Defendant by indicating how much the limitation of damages clause in the warehousing contract would limit Plaintiff's recovery of its claimed full damages. Therefore, Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses should be barred from mentioning, arguing, testifying or otherwise informing the jury about the limitation of damages clause contained in the warehousing agreement between the parties pursuant to Federal Rule of Evidence 403.

*Id.*, pp. 20-21.

Aspen American responds by arguing that the limitation of damages clause is part of the

warehouse contract between the parties and insisting that "[t]here is no question that the entirety

of the contract between Plaintiff and Defendant, including the limitations of damages clause, is

35

relevant." Plaintiff's Opposition Brief (ECF No. 128), p. 18. Aspen American insists that "[t]he

jury, as finder of fact, is entitled to hear all relevant evidence, including the terms of the

agreement of the parties." *Id*., p. 19.

Interstate replies by arguing that the warehouse agreement or contract between the parties

should be excluded from the evidence altogether because it is undisputed that a contract existed

and that Aspen American has alleged that Interstate breached it. Therefore, the

contract–including the limitations clause–is irrelevant to the issues the jury must decide and its

introduction into evidence would unduly prejudice Interstate because it could potentially cause

the jury to determine that Interstate was grossly negligent *not* based on the evidence of

Interstate's conduct but instead on the fact that Aspen American could not recover as much in

damages if the jury were to conclude that Interstate was only liable for ordinary negligence. But

as Interstate points out, "by mentioning the limitation of damages clause, which is irrelevant to

Defendant's alleged negligence, Plaintiff can attempt to inflame the passion and sympathy of the

jury and prejudice Defendant by indicating how much the limitation of damages clause in the

warehousing contract would limit Plaintiff's recovery of its claimed full damages." Defendant's

Reply (ECF No. 130), p. 21. Interstate concludes by arguing as follows:

> [D]espite the fact that the Agreement should not be presented to the jury, Plaintiff
> seeks to introduce it at trial because, as indicated in Interstate's Memorandum of
> Law in Support of its Motion in Limine, Plaintiff wants to argue or comment
> about the limitation of damages clause in front of the jury to engender sympathy
> so that the jury will find that Interstate was grossly negligent. Plaintiff hopes that
> the jury will find that the limitation of damages clause in the Agreement is unfair,
> will abandon logic and reason, and will find that Interstate was grossly negligent
> so that Plaintiff can avoid the limitation of damages clause. Because of this,
> namely engendering sympathy, the Agreement's probative value is greatly
> outweighed by the risk of prejudice at trial. This is especially true in light of the
> fact that there is no dispute about the existence of the Agreement or the

Agreements contents. As such, even if the Agreement was relevant, which it is
clearly not, the Agreement should be excluded at trial pursuant to F.R.E 403.

*Id*., p. 20.

The Court agrees with Interstate that the warehouse contract itself is not relevant and the

introduction of the contract, containing the limitations clause, would be unduly prejudicial. The

jury's duty will be to determine whether Interstate was negligent or grossly negligent and the

limitations clause in the parties' contract is not relevant to that issue. As Interstate points out, if

the jury finds that Interstate was not negligent, the limitations clause is rendered moot; if the jury

finds Interstate liable for ordinary negligence, the limitations clause would apply to limit Aspen

American's recovery; and if the jury finds that Interstate was grossly negligent, the limitations

clause would not apply and the jury will assess damages accordingly. Therefore, the contract

itself is irrelevant–all the jury needs to know is the undisputed fact that the parties entered into a

contract for Interstate to store Aspen American's insured's food products and that Aspen

American alleges that Interstate breached that contract by negligently causing the destruction of

those products. Whether the limitation clause applies is not an issue the jury needs to decide. It

will be decided implicitly by the jury's verdict on the issues of negligence and gross negligence,

which the jurors must render based only on their assessment of Interstate's conduct, not on the

amount of damages Aspen American may or may not be able to recover as a result of that verdict.

Accordingly, the Court GRANTS Interstate's motion in limine on this point.

**P. Testimony, Argument, Comment or Statements implying than the
substantive law of any other jurisdiction, other tha[n] Michigan Law,
should apply to this case**.

Interstates moves the Court to preclude "Plaintiff, Plaintiff's counsel and Plaintiff's

witnesses . . . from commenting, arguing, testifying or making any statements that the substantive law of any other state other than the laws of Michigan should be applied in this case. During the summary judgment proceedings in this case, both parties agreed that Michigan law controlled in this case. In fact, the Court noted the parties['] agreement in [its] summary judgment order and found that Michigan law would apply in this case. Therefore, Plaintiff should be barred from arguing or attempting to applying the substantive law of any other state other than the State of Michigan." Defendant's Memorandum (ECF No. 106), p. 21-22.

For once Aspen American does not disagree with Interstate's position. In keeping with the tenor of this litigation, however, Aspen American does not simply concede the point, instead responding as follows: "Plaintiff concedes that Michigan law applies to this case. By making this contention, Plaintiff nonetheless maintains that the Federal Rules of Civil Procedure and the Federal Rules of Evidence also apply to this case." Plaintiff's Opposition Brief (ECF No. 128), p. 19.

> In reply, Interstate makes an additional (and equally unnecessary) point:
>
> Plaintiff does not appear to object to Interstate's sixteenth Motion in Limine regarding the fact that Michigan law controls the substantive issues in this case. Plaintiff's argument, to the extent there is an argument, is that the Federal Rules of Civil Procedure and the Federal Rules of Evidence also apply in this case. However, Interstate's sixteenth Motion in Limine only applies to the substantive law governing this case. The Federal Rules of Civil Procedure and the Federal Rules of Evidence are procedural laws which Interstate agrees control the procedural aspects of this case.

Defendant's Reply (ECF No. 130), p. 20. Both sides are correct: Michigan law applies to the substantive claims, which both sides concede, and the Federal Rules of Civil Procedure and the Federal Rules of Evidence apply to the procedural aspects of the trial. So why was the Court

required to spend time reviewing the parties' briefs on this issue and addressing the matter?[2] In

any event, Interstate's motion in limine is GRANTED on this point and *neither* party may present

evidence or argument that any law other than Michigan state law applies to the substantive

claims in this case (assuming either side was going to do so). Moving on.

### Q. Testimony, argument, comment or statements based on pure speculation and conjecture and are not supported by known facts or evidence.

Lastly, Interstate moves the Court to preclude "Plaintiff's counsel or Plaintiff's witnesses

[from] attempt[ing] to introduce evidence or testify about facts or evidence which are not known

or supported in this case[]" on the basis that "speculation and conjecture are not sufficient to

support negligence under Michigan law." Defendant's Memorandum (ECF No. 106), p. 22

(citation omitted). Interstate insists that "based on well-settled Michigan law, and Federal Rules

of Evidence 401, 402 and 403, Plaintiff, Plaintiff's counsel, and Plaintiff's witnesses should be

barred from introducing evidence or testimony which is based on speculation and conjecture." *Id*.

Aspen American responds by arguing as follows:

Defendant once again fails to mention any specific piece of evidence . . . . Instead,
it merely presents the broad assertion that speculation and conjecture are not
sufficient to support a theory of negligence.

As fully briefed in Plaintiff's Motion in Limine #8 . . . , Plaintiff's witnesses, both

---

[2] As noted above, Interstate repeatedly accuses Aspen American of lodging unnecessary objections to its motion in limine simply for the sake of objecting, which is largely true. But on this point *both* Interstate and Aspen American engage in unnecessary quibbling over a matter on which they agree, playing a game of one-upmanship over the applicability of the Federal Rules. Rather than simply stating its agreement that Michigan law applies, Aspen American felt compelled to jump in and add that the Federal Rules also apply, causing Interstate to poke back by arguing, "Yes, but the Federal Rules only apply to procedural matters!" Neither party has put much effort at all into picking its battles, opting instead to throw all manner of issues–real and concocted–into their motions in limine, and to contest or argue about issues on which there is no real dispute.

> expert and lay, will necessarily offer certain speculations and implications due to Defendant's spoliation of evidence. And as more fully explained in Section XIII supra, to pretend as though spoliation is not relevant, and therefore speculations and implications are barred from being made, would result in Defendant benefitting from spoliating evidence and reducing any possible negative inferences that may be drawn from such actions.

Plaintiff's Opposition Brief (ECF No. 128), p. 19.

In its reply, Interstate does not completely agree with nor completely dispute Aspen American's argument:

> [W]hile Interstate agrees that Plaintiff's witnesses can testify about the evidence for which they would have looked if they had performed a through inspection during the numerous times they were onsite. However, Plaintiff's witnesses should not be allowed to testify what they "believe" or "think" the evidence would have shown. Such testimony would violate the Court's sanction order, would severely prejudice Interstate, and would deny Interstate a fair trial."

Defendant's Reply (ECF No. 130), p. 21. Once again, both sides have a point. Aspen American is correct that it is proper for witnesses to offer opinions or assessments under certain circumstances; and Interstate is correct that opinions that are based solely on speculation or conjecture are rarely admissible. In this instance Aspen American's argument that Interstate's motion in limine on this point is overly broad is correct. Whether any witness, expert or lay, may offer opinion testimony depends on the nature and context of that witness' testimony (and, of course, their personal knowledge of the facts about which they are testifying). This is not an issue that can be addressed now and a blanket order precluding Aspen American from presenting any testimony containing opinion, speculation or conjecture is unwarranted. Instead, such issues can only be resolved during trial upon objection of a party to the testimony of a witness. Accordingly, the Court DENIES Interstate's motion in limine on this point.

40

## II. Motion for Separation of Witnesses.

In addition to its motion in limine, Interstate filed a separate motion for separation of

witnesses, stating as follows:

> Defendant, Interstate Warehousing, Inc., by counsel, hereby respectfully moves
> the Court, pursuant to Rule 615 of the Federal Rules of Evidence, for an order
> separating each witness on Plaintiff's witness list and any rebuttal witnesses called
> by Plaintiff, excluding the designated representative of Aspen American Insurance
> Co. who will be representing Plaintiff at trial, during the trial of this matter and
> precluding such witnesses from remaining inside the courtroom during any
> portion of the trial apart from the time each witness must be in the courtroom to
> give his or her testimony. Defendant further requests that the Court instruct the
> witnesses to refrain from discussing with any other witnesses what his or her
> testimony was or is expected to be or what occurred inside the courtroom during
> that witness's testimony.

Defendant's Motion for Separation of Witnesses (ECF No. 107), p. 1. This, of course, is a

common and perfunctory pretrial request and Aspen American does not oppose it (having not

filed a response to the motion). Accordingly, the motion for separation of witnesses is

GRANTED.

## III. Motions in Limine and Motion to Correct filed by Plaintiff Aspen American.

Aspen American filed eight motions in limine (ECF Nos. 108 through 115, inclusive) and

a Motion for Leave to Correct Its Motion *In Limine* #7 (ECF No. 116). In the latter motion,

Aspen American requests leave to attach an exhibit to its motion in limine #7 that was

inadvertently not included when the motion was filed. Interstate did not file a response to the

motion and so it is unopposed. The Court GRANTS the motion. The exhibit, attached as Exhibit

1 to Aspen American's motion (and docketed as ECF No. 116-1) is admitted and will be

considered by the Court when addressing Aspen American's motion in limine #7.

## A. Plaintiff's Motion in Limine #1–Motion in Limine to Exclude any Evidence in Support of Defendant's "Act of God" Affirmative Defense.

Aspen American moves the Court "to bar any and all voir dire, statement, testimony, questioning, impeachment, cross-examination, expert testimony, or argument, by innuendo or otherwise, at any time during the course of trial to convey to the jury information regarding or making references or comparison that an act of God may have contributed to or was the proximate cause of the injuries sustained by Plaintiff." Plaintiff's Motion in Limine #1 (ECF No. 108), p. 1. Interstate, of course, has asserted the Act of God affirmative defense, claiming it is not liable for the roof collapse and subsequent destruction of the food products because those losses were the result of an act of God, i.e., the alleged historic snowfall, not the result of any negligence on the part of Interstate. Aspen American, however, argues that Interstate should be precluded from presenting evidence or argument in support of this defense because it is unsupported under Michigan law. Aspen American argues as follows:

> Michigan law recognizes "act of God" as an affirmative defense that requires a defendant to show that the roof collapse . . . proceed[ed] from natural causes and cannot be anticipated and provided against, such as unprecedented storms, or freshets, lightning, earthquakes, etc." *Golden & Boter Transfer Co. v. Brown & Sehler Co.*, 177 N.W. 202, 204 (Mich. 1920).

> There is little argument as to the material facts themselves in this matter: the snow accumulation on the roof of Defendant's warehouse gradually increased over the weeks leading up to the collapse itself. Defendant knew that heavy snow accumulations could cause the roof to collapse. Further, defendant had the ability to shore the roof from the inside or remove snow from the roof to reduce the weight on the roof.

> As such, Defendant should be barred from presenting evidence to the factfinders that it could not have anticipated or provided against this snow. Human agency–that is, the conscious decision to allow the snow to continue to accumulate atop the roof–at minimum contributed to Aspen's losses. "Act of God" must be eliminated from Defendant's arsenal.

*Id.*, p. 2.

Interstate responds by arguing as follows:

At the heart of this issue is the question of whether the snow storm(s) prior to the subject collapse was/were unprecedented. Interstate argues that the storms were unprecedented and not anticipated while Plaintiff claims the opposite. Which party's position is correct is a quintessential question that must be resolved by the jury. The meteorological data, which will be presented at trial, clearly shows that the region where the subject collapse occurred experienced one of the highest snowfalls in history. As such, the historical data indicates that the snow storm giving rise to the subject collapse could be deemed "unprecedented" by the trier of fact. Plaintiff claims that the snowfall was not unprecedented, but fails to provide any cogent argument that shows why the storm was not unprecedented. The best Plaintiff can do is argue that the snow fall giving rise to subject collapse occurred for over a period of weeks. This argument might go to the anticipation element of the unprecedented storm, but by no means proves that the storm could be anticipated.

This again is a question for the jury to decide. To perform its function, the jury must be presented the evidence. If Defendant is successful in carrying its burden, there is sufficient evidence for the jury to find that the subject collapse was an "Act of God."

Defendant's Response to Plaintiff's Motion in Limine #1 (ECF No. 119), pp. 2-3.

In reply, Aspen American reiterates its arguments that Interstate should be precluded from presenting its Act of God defense because it has no evidence to support it and because Interstate spoliated evidence thereby preventing *either* side from determining the proximate cause of the roof collapse. Plaintiff's Reply (ECF No. 141), pp. 1-3.

This Court declines Aspen American's invitation to preclude Interstate from presenting its Act of God defense, since doing so would require the Court to find facts and weigh the evidence. As the Court stated in its previous order ruling on Aspen American's motion for partial summary judgment, "[i]n the present case, whether an Act of God was the sole proximate cause

43

of the injury underlying this lawsuit is for a jury to decide, since Interstate's affirmative defense

is intertwined with the issue of its alleged gross negligence." Opinion and Order of March 13,

2019 (ECF No. 56), p. 19. Accordingly, Aspen American's motion in limine #1 is DENIED.

**B. Plaintiff's Motion in Limine #2–Motion in Limine to Exclude Unauthenticated Climatological or Meteorological Data.**

Aspen American moves the Court "to bar evidence Defendant may attempt to admit

relating to the weather conditions that existed both at the time Plaintiff suffered its damages and

the months leading up to said event." Plaintiff's Motion in Limine #2 (ECF No. 109), p. 1. Aspen

American argues as follows:

> In its responses to Plaintiff's discovery requests, and throughout its motion
> practice, Defendant has referenced documents that either purport to explain
> weather conditions that existed in the months leading up to the Roof Collapse, or
> purport to provide historical context for annual snowfall in "Grand Rapids Area,
> MI." See Defendant's Designation of Evidence in Support of Motion for Partial
> Summary Judgment (Dkt. 37), Exhibits G and H. However, at no point has
> Defendant identified a witness that can lay proper foundation establishing that
> these documents accurately and verifiably provide snowfall data for Grand
> Rapids, MI, let alone that this data can somehow be traced back to the snowfall at
> the warehouse location specifically.
>
> Moreover, admission of these documents without proper authentication, or
> without a witness to explain how the data relates to the warehouse location itself,
> would unfairly prejudice Plaintiff and mislead the jury, encouraging them to
> simply apply the broad snowfall data to the warehouse location itself without the
> requisite corroboration of a climatological/meteorological expert or the individual
> who compiled the data him/herself.

*Id.*, p. 2.

In response, Interstate contends that the climatological data at issue is admissible on

several bases, including pursuant to Federal Rule of Evidence 901 because Interstate "may call an

individual from the NOAA to testify at trial to authenticate the subject climatological data

previously produced by Interstate[,]" that the data is self-authenticating pursuant to Fed.R.Evid. 902(5) as a publication of an official agency (the NOAA), and/or that this Court could take judicial notice of the document pursuant to Federal Rule of Evidence 201. Defendant's Response (ECF No. 120), pp. 1-5. Interstate also points out that Aspen American "has been in possession of the historical weather data for upwards of five (5) years and its purported meteorological expert, Mark McGinnis, utilized the same historical weather data, as well as additional data, in his expert witness report. Accordingly, if deemed necessary, Plaintiff can have Mr. McGinnis give context to the historical weather data in his testimony at trial." *Id.*, p. 5.

In reply, Aspen American reiterates its argument that "the identification of the 'Grand Rapids Area' does little to aid the jury in determining how much snowfall was at the precise location where the Roof Collapse occurred." Plaintiff's Reply (ECF No. 142), p. 1.

Interstate's arguments are well taken and sufficient to defeat Aspen American's motion in limine #2. But there is another more fundamental reason to deny it, which is that Aspen American's objection goes to the weight to be accorded the evidence rather than its admissibility. Accordingly, Aspen American's motion in limine #2 is DENIED.

### C. Plaintiff's Motion in Limine #3–Motion in Limine to Exclude Expert Opinions by Persons Who Have not Been Timely Disclosed.

Aspen American moves the Court "[p]ursuant to Federal Rules of Evidence 104(a) and Federal Rules of Civil Procedure 26 and 37, . . . for this Court to preclude Interstate . . . from offering at trial any expert witnesses. Defendant has never disclosed any expert witnesses in this matter." Plaintiff's Motion in Limine #3 (ECF No. 110), p. 1.

Interstate responds by stating that it "does not object to the principle that Defendant

45

should not be permitted to call any witness who was not or has not been disclosed in this matter.

However, Interstate does object to Plaintiff's Motion in Limine as it pertains to Lisa

Stefanovsky." Defendant's Response to Plaintiff's Motion in Limine #4 (ECF No. 122), p. 1.

Interstate explains that:

> Lisa Stefanovsky is a Health Officer with the Ottawa Department of Public Health. On or about March 11, 2014, one day after the roof collapse giving rise to this matter, Ms. Stefanovsky authored a letter advising Interstate that certain food products stored in the warehouse at the time of the collapse, including the food owned by Plaintiff's insured, was seized by the Michigan Department of Agriculture. In addition, Ms. Stefanovsky's March 11, 2014 letter directed Interstate to destroy the seized food product and remove the collapsed portion of the warehouse roof.
>
> Plaintiff's attempt to exclude Ms. Stefanovsky from testifying must be denied. First, Plaintiff, or Plaintiff's counsel, was provided Ms. Stefanovsky's March 11, 2014 letter during discovery in this case. As such, Ms. Stefanovsky was disclosed during discovery and Plaintiff, or Plaintiff's counsel, knew, or should have known, that she had information relevant to Plaintiff's claims and Interstates defenses in this case. As such, Plaintiff's claim that Ms. Stefanovsky was not disclosed and that her testimony would surprise and prejudice Plaintiff is completely baseless.
>
> Additionally, one of the claims asserted by Plaintiff against Interstate is that Interstate committed conversion with respect to Plaintiff's insured's food product stored at the Warehouse. Ms. Stefanovsky's testimony in this case is highly relevant in this case, in particular, as it relates to Plaintiff's conversion claims asserted against Interstate. Ms. Stefanovsky's testimony will clearly demonstrate that Interstate did not convert Plaintiff's insured's food products in this case. Even assuming that Ms. Stefanovsky was not disclosed in discovery, which she clearly was, her testimony is highly relevant, extremely probative, and Ms. Stefanovsky should be allowed to testify at the trial of this matter.
>
> Furthermore, Ms. Stefanovsky is the author of the March 11, 2014 letter. As such, Ms. Stefanovsky is the record custodian who can, if necessary, provide testimony to authenticate the Ottawa Department of Public Health Record for admission at trial. As such, even if Ms. Stefanovsky does not provided any substantive testimony at the upcoming trial of this matter, she should be permitted to testify for purposes of authenticating the March 11, 2014 letter from the Ottawa Department of Public Health at trial.

*Id.*, pp. 1-3.

> In reply, Aspen American argues as follows:
>
> Defendant argues that it should be spared the consequences of its failure to disclose Lisa Stefanovsky pursuant to Fed. R. Civ. P. 26 because, during the course of discovery, it provided to Plaintiff a letter authored by Ms. Stefanovsky. Dkt. 122 at 2. Notably, nowhere in the Response does Defendant even attempt to convince the Court that it complied with the requirements of the Rule.
>
> Fed. R. Civ. P. 26 has no exception for instances where a party provides a letter written by a third party during the course of discovery to the opposing party but fails to identify the letter author as a potential witness. Nor does Defendant offer any case law in its Response to support this peculiar position.

Plaintiff's Reply (ECF No. 133), p. 1.

Interstate argues that Ms. Stefanovksy's testimony would be relevant to Aspen American's conversion claim. However, on July 30, 2021, while the motions in limine were pending, the Court ruled on Interstate's motion for partial summary judgment and granted the motion as to Aspen American's conversion claim. Opinion and Order (ECF No. 144). Since there is no conversion claim remaining in this case, Ms. Stefanovsky's testimony is not needed on that issue. Accordingly, Aspen American's motion in limine will be GRANTED in part and DENIED in part. The Court holds that *neither* party will be permitted to call any expert witness who has not been timely disclosed. However, to the extent that Ms. Stefanovsky's testimony would be required to authenticate her letter, the motion is denied.[3]

### D. Plaintiff's Motion in Limine #4–Motion in Limine to Exclude Testimony of Witnesses Who Have Not Been Timely Disclosed.

---

[3] A stipulation by the parties that the letter is authentic would obviate the need for Ms. Stefanovsky's appearance at trial. The Court encourages the parties to put forth a more concerted effort to stipulate to the admission of as many exhibits as possible when they construct a Final Pretrial Order.

Aspen American moves the Court " to preclude Interstate . . . from offering testimony from any witnesses that it has not yet disclosed. Plaintiff seeks to prevent Defendant from offering at trial any testimony from witnesses who have not been disclosed within the required time. Under Fed. R. Civ. P. 26 and 37, parties cannot introduce testimony at trial by a witness that was not disclosed prior to the discovery deadline and within a timely manner." Plaintiff's Motion in Limine #4 (ECF No. 111), p. 1. In the body of its motion, Aspen American again addresses the testimony of Ms. Stefanovsky and argues that it should be excluded due to Interstate's alleged failure to properly identify her as a witness. *Id*., pp. 2-5. Aspen American does not challenge any other specific witnesses, but contends that Interstate "has failed to disclosure [sic] the identity of Stefanovsky until the eve of trial. Accordingly, Defendant should be precluded from calling Stefanovsky, *or anyone else not timely disclosed*, as witnesses at trial." *Id*., p. 5.

The Court has already ruled on the admissibility of Ms. Stefanovsky's testimony, limiting it as outlined above. In that regard, Aspen American's motion is moot. However, as to the basic proposition that Interstate "should be precluded from calling [any witness] not timely disclosed" is a valid request that, once again, applies equally to both sides. To that extent, the motion is GRANTED and neither party shall be permitted to call any witness not previously and properly disclosed.

### E. Plaintiff's Motion in Limine #5–Motion in Limine to Exclude Reference to Snow Removal Policies.

Aspen American moves the Court "to bar any and all voir dire, statement, testimony, questioning, impeachment, cross-examination, expert testimony, or argument, by innuendo or

48

otherwise, at any time during the trial that conveys to the jury information regarding, making references to, or comparing alleged policies and procedures that Interstate . . . had in place for snow removal at the time of the incident." Plaintiff's Motion in Limine #5 (ECF No. 112), p. 1.

Aspen American elaborates as follows:

> Not once has Defendant come forward with evidence of the existence of any policy and procedure regarding snow removal or snow events in effect at the time of the incident throughout the course of discovery in this matter. In fact, Defendant's employee, Nate Tippmann ("Tippmann"), testified that Defendant did not have a policy or procedure in effect regarding snow removal or snow events in 2014. Defendant has blatantly admitted this point in past filings: "*While there were no written procedures or instructions for snow removal from the roofs of any of Defendant's facilities prior to March 2014*, maintenance personnel at the Hudsonville warehouse would routinely remove snow from around the openings of scuppers (drains) and drainage paths when the accumulation would exceed an estimated ten (10) inches." Defendant's Memorandum of Law in Support of Defendant's Motion for Partial Summary Judgment (Dkt. 36) at 3. Defendant cannot now introduce a policy or procedure regarding snow removal or snow events at the time of the incident at the trial of this matter, and this Court should enter an order barring Defendant from doing so at trial.

*Id*., p. 2 (italics in original).

> In response, Interstate contends that:

> Plaintiff's argument that Defendant never provided evidence of a policy or procedure with regard to snow removal during the pendency of this litigation clearly misstates the evidence and is not supported by admissible evidence developed in this matter. Plaintiff cites to the Deposition of Nate Tippmann dated June 11, 2015 to support this statement; however, a reading of the deposition transcript shows that Mr. Tippmann, in reality, stated that Interstate did not have *formal* written policies and/or programs in place regarding snow event response or snow removal. See PLAINTIFF'S EXHIBIT 5, DEPOSITION OF NATE TIPPMANN DATED JUNE 11, 2015 at page 250, lines 2-14. However, earlier in the same deposition, Mr. Tippmann described the *informal* verbal snow removal policies, those being that warehouse personnel would routinely remove snow from around the opening of the scuppers (drains) and drainage paths when the accumulation would exceed an estimated ten (10) inches. See PLAINTIFF'S EXHIBIT 5, DEPOSITION OF NATE TIPPMANN DATED JUNE 11, 2015 at page 119, lines 5-8; 121, lines 1-4. See also PLAINTIFF'S EXHIBIT 6 AT 47,

> LINES 15-18. Further, Plaintiff's own purported snow removal expert
> acknowledged in his deposition various verbal policies Interstate Warehousing
> had in place at the time of the collapse with respect to addressing and monitoring
> snow loads on the warehouse roof. See DEPOSITION OF JEREMY SWENSON
> at page 43, lines 14-16, page 44, lines 10-20; [Exhibit A]. Therefore, Plaintiff's
> claim that Interstate had no policies for snow removal is not supported by the
> evidence developed in this case. In fact, the opposite is true, and Plaintiff's own
> expert, Mr. Swenson, has so acknowledged this in his deposition.

Defendant's Response to Plaintiff's Motion in Limine #5 (ECF No. 123), p. 2 (italics and

capitalization in original; boldface added).

In reply, Aspen American concedes that Interstate can introduce evidence of its *informal*

procedures for snow removal, but continues to maintain that Interstate cannot present evidence at

trial of any *formal* written policies or procedures (because none existed):

> Defendant concedes in its Response that "it did not have a written snow removal
> policy in place, and that it has not produce[d] a written snow removal policy in
> discovery." Dkt. 123 at 3. Defendant also agrees that it should not be allowed to
> introduce evidence of a written policy at trial. *Id*. *Plaintiff concurs with these
> admissions by Defendant*. Based upon these two concessions alone, Plaintiff's
> underlying Motion should be granted.
>
> Even if the Court grants Plaintiff's underlying Motion, Defendant will be free to
> present evidence that its conduct did not rise to the level of gross negligence. An
> order preventing Defendant from making references or comparisons to snow
> removal policies or procedures would not necessarily prevent its witnesses,
> whether employees, officers, or the like, from testifying to the discussions they
> had amongst themselves regarding the removal of the snow during the date and
> time in question, or at any point prior. But to now allege after over six years of
> litigation that these verbal discussions rose to the level of "policies" or
> "procedures" and then to characterize them as such within the purview of the jury
> would be highly prejudicial to Plaintiff.

Plaintiff's Response (ECF No. 134), pp. 1-2 (italics added).

Once again there does not appear to be any disagreement here. As Interstate concedes in

its response brief:

> Interstate agrees that it did not have a written snow removal policy in place on the date of the subject accident, and that it has not produce a written snow removal policy in discovery. Therefore, at most, Interstate should not be allowed to introduce evidence of a written snow removal policy. However, barring Interstate from presenting any evidence of its verbal snow removal policies would be extremely prejudicial and would, essentially, prevent Interstate from providing any defense against Plaintiff's claim in this matter.

Defendant's Response to Plaintiff's Motion in Limine #5 (ECF No. 123), p. 3. So Interstate concedes that it cannot introduce evidence of any formal or written snow removal policy, but contends that it can still present evidence of its *informal* procedures for snow removal, which is correct. This evidence, obviously, is relevant to the issues in this case, especially the linchpin claims of negligence and gross negligence. Accordingly, Aspen American's motion in limine on this point is GRANTED in part (precluding Interstate from mentioning or presenting any evidence of a formal snow removal policy or written procedure) and DENIED in part (permitting Interstate to present evidence and testimony regarding its informal procedures for dealing with excessive snow accumulation on the warehouse roof.)

### F. Plaintiff's Motion in Limine #6–Motion in Limine to Exclude Defendant's Untimely Document Production.

Aspen American moves the Court "to bar any and all voir dire, statement, testimony, questioning, impeachment, cross-examination, expert testimony, or argument, by innuendo or otherwise, at any time during trial that conveys to the jury information stemming from Interstate['s] . . . untimely, amended discovery responses (and documents produced therewith). Further, Plaintiff moves for an order from this Court barring Defendant's use or citation to documents not produced in discovery, including but not limited to Document 67-1 (email from Ralph Den Hartigh); Document 67-3 (Affidavit of Nate Tippmann); Document 67-3, Exhibit A

51

(unknown log); and Document 67-3, Exhibit B (letter)." Plaintiff's Motion in Limine #6 (ECF
No. 113), p. 1. Aspen American argues that these documents should be excluded from evidence
because they were not timely disclosed during discovery, which it notes "closed on September
28, 2019." *Id.*, p. 3. The documents at issue were submitted by Interstate as part of its response in
opposition to Aspen American's motion for sanctions for spoliation, which this Court ruled on in
an Opinion and Order entered on December 5, 2019 (ECF No. 75). As Aspen American correctly
points out, the Court denied Aspen American's motion to strike the untimely exhibits because the
Court did not rely on them when ruling on the motion for sanctions. Aspen American renews its
objection to the documents now on the grounds that they were not disclosed timely pursuant to
Fed.R.Civ.P. 26 and 37. Aspen American argues as follows:

> On April 17, 2019, this Court granted Aspen leave to file a motion related to
> Interstate's spoliation of evidence. . . . Aspen filed its spoliation motion on May 1,
> 2019. . . . Interstate filed its response to Aspen's spoliation motion on May 16,
> 2019. . . . In its responsive filing, Interstate relied on the Untimely Documents that
> were never disclosed during discovery.
>
> On May 20, 2019, without leave of Court, Interstate served Aspen with
> Defendant's Responses to Plaintiff's Requests for Admission . . . and Defendant's
> Responses to Plaintiff's Request for Documents . . . , which Aspen received by
> mail on May 23, 2019.

Plaintiff's Motion in Limine #5 (ECF No. 113), p. 3.

In response, Interstate argues that the documents at issue were not untimely, but were
proper supplemental discovery responses pursuant to Fed.R.Civ.P. 26: "Rule 26(e) simply
requires parties to supplement or correct its responses "in a timely manner if the party learns that
in some material respect the disclosure or response is incomplete or incorrect, and if the
additional or corrective information has not otherwise been made known to the other parties

52

during the discovery process or in writing." Defendant's Response to Plaintiff's Motion in
Limine #6 (ECF No. 124), p. 4 (citing Fed. R. Civ. P 26(e)(1)(A)). Interstate also argues that
even assuming the disclosures were untimely, Aspen American cannot claim that it is prejudiced
by the alleged late disclosure:

> [A]ll the subject documents were formally produced in discovery on May 20,
> 2019, nearly two (2) years ago. As such, Plaintiff had ample time and
> opportunity2 to examine witnesses or seek additional discovery related to the
> information in the alleged untimely responses. However, Plaintiff simply elected
> to take no action and instead appears to attempt to prejudice defendants by
> seeking outright exclusion of relevant evidence which it had in its possession
> since May 2019.

*Id*., p. 5.

In reply, Aspen American continues to assert that Interstate's discovery responses were
untimely. Aspen American also argues that its motion should be granted because "Plaintiff has
been severely prejudiced, and Defendant provided no justification for its failure to provide timely
and proper discovery responses." Plaintiff's Reply (ECF No. 135), p. 3. Aspen American doesn't
explain exactly *how* it has been unduly prejudiced by the (arguably) untimely disclosure of
documents it has had in its possession for over two years, it simply states in conclusory fashion
that it has been. The Court also notes that Aspen American raises no issue as to the relevance of
the documents at issue–instead moving to exclude them altogether because they were disclosed
after the close of formal discovery. The Court concludes that the documents at issue are
admissible at trial and DENIES Aspen American's motion in limine #6.

### G. Plaintiff's Motion in Limine #7–Motion in Limine to Preclude Objections to Admission of FEMA Snow Load Safety Guide Pursuant to FRE 902.

Aspen American moves the Court " to preclude all objections to admission of FEMA's

Snow Load Safety Guide (FEMA p-957/January 2013–Catalog No: 13052-4) into evidence that

may be raised by Interstate . . . ." Plaintiff's Motion in Limine #7 (ECF No. 114), p. 1. Aspen

American argues as follows:

> Plaintiff produced the expert report of Jeremy Swenson, CSP ("Swenson") during
> the discovery of this case to review case documents and opine on the
> reasonableness of Defendant's conduct with respect to snow and ice removal (or
> lack thereof) in the weeks leading up to the Roof Collapse. Swenson relied on
> multiple sources in conjuring up [sic] his opinions, one such resource being the
> FEMA P-957–Snow Load Safety Guide ("FEMA Guide"), which was attached to
> Swenson's expert report and previously produced to Defendant. A January 2013
> copy of the FEMA Guide is attached hereto as Exhibit 1.
>
> Aspen respectfully requests that this Court admit the FEMA Guide prior to trial.
> In doing so, the Court would relieve FEMA employees from the burden and
> expense of testifying at trial for the sole purpose of laying the foundation to admit
> a self-authenticating document. The admission of this exhibit would also conserve
> judicial resources by shortening the length of trial, as the live testimony of an
> additional foundation witness would no longer be necessary.

Plaintiff's Motion in Limine #7 (ECF No. 114), pp. 1-2.

> In response, Interstate argues as follows:

> At the outset it is highly unusual for a party to seek to prohibit a party from stating
> an objection to the admission of evidence or testimony at a trial. The purpose of a
> Motion in Limine is not to ask a court to force a party to waive . . . potential
> appeal issues by prohibiting the party from raising an objection. "The purpose of a
> motion in limine is to prevent the display of potentially prejudicial material to the
> jury until the trial court has the opportunity to rule on its admissibility." *Lehman
> v. State*, 777 N.E.2d 69, 76 (Ind. Ct. App. 2002). As such, since Plaintiff's Motion
> in Limine #7 does not actually seek to exclude any evidence, it should be den[ied]
> in its entirety.
>
> Additionally, Interstate anticipates that Plaintiff will attempt to argue or otherwise
> convey to the jury that the FEMA Guide prescribes the legal standard of care in
> this matter. If fact, Plaintiff essentially admits in Motion in Limine #7 that
> "According to Swenson, the FEMA Guide is used in the snow and ice removal
> industry as an industry standard by property owners, building and facility
> managers, and snow removal contractors." As such, Interstate firmly believe that
> Plaintiff intends to use the FEMA Guide to blur the lines between the practices

and procedures contained in the FEMA Guide, and the legal standard of care for negligence. In order to do so, Plaintiff has to prevent Interstate from objecting to the introduction of the FEMA Guide at trial.

Defendant's Response to Plaintiff's Motion in Limine #7 (ECF No. 125), pp. 1-2.

In its reply, Aspen American argues as follows:

At the outset, it bears repeating that Plaintiff's request in its underlying Motion in Limine #7 is not a blanket request for FEMA's Snow Load Safety Guide (the "Guide") to be used for any and all purposes that Plaintiff sees fit. Rather, it is a narrow request seeking a preliminary ruling from this Court that said Guide is self-authenticating under Fed. R. Evid. 902 and admissible as a public records exception to the rule against hearsay under Fed. R. Evid. 803(8). Nowhere in Defendant's Response . . . does Defendant argue against the self-authenticating nature of the Guide. Nor does the Response contain any allegation that the Guide is inadmissible hearsay. Therefore, absent objection, Plaintiff's underlying Motion should be granted.

. . .

With a preliminary ruling that the Guide is both self-authenticating and admissible as a hearsay exception, judicial resources will be conserved by eliminating the need of live witness testimony regarding foundational aspects of the document itself. Because Defendant addressed neither point in its Response, it is self-evident that it will not be prejudiced by this narrow preliminary ruling.

Plaintiff's Reply (ECF No. 136), pp. 1-2. Aspen American acknowledges that Interstate "will [not] be prevented from raising any of its objections to the substance or purpose of the Guide at the appropriate time during the trial." *Id.*, p. 2.

The Court agrees with Aspen American that the FEMA Guide should be admitted into evidence as a self-authenticated record pursuant to Rule 902 and an exception to the hearsay rule pursuant to Fed.R.Evid. 803(8) as it is a public record. The admission of the document, as Aspen American points out, will expedite and streamline the trial (a bit, anyway) by obviating the need for Aspen American to call a FEMA employee or officer to testify for the purpose of

authenticating the exhibit at issue. Most importantly, though, Interstate objects not to the admission or relevance of the exhibit, but rather the concern that "Plaintiff will attempt to argue or otherwise convey to the jury that the FEMA Guide prescribes the legal standard of care in this matter." This objection is well taken, but has already been resolved by the Court's ruling on Interstate's motion in limine seeking to preclude Aspen American from introducing evidence of a heightened or different standard of care for a bailee/property owner," in which the Court concluded that "Aspen American can present the FEMA Guidelines at trial to support its argument that Interstate's conduct leading up to the roof collapse was negligent or grossly negligent, just as Interstate concedes, but cannot argue that those Guidelines set the standard of care." *See* page 11, above. Therefore, Interstate's objection to the exhibit has already been granted: Aspen American cannot state or imply that the FEMA Guide sets the legal standard of care applicable in this case, but it can introduce the Guide as one piece of evidence in support of its claims that Interstate's actions prior to the roof collapse were negligent or grossly negligent.

That leaves Aspen American's request for a ruling that the FEMA Guide is admissible without the need for testimony from a FEMA employee and as an exception to the hearsay rule under Rule 803(8). This is a reasonable request that will serve to expedite the trial and is GRANTED.

### I. Plaintiff's Motion in Limine #8–Motion in Limine to (I) Preclude Objections to Inferences Made Due to Spoliation of Evidence & (II) Permit Witnesses to Testify About Spoliated Evidence.

Aspen American moves the Court "to bar any and all objections to inferences made and conclusions drawn by Plaintiff's experts in their reports, deposition testimony, or during the course of their trial testimony which were made out of necessity due to the spoliation of evidence

by Interstate . . . . Plaintiff further moves for an order allowing its witnesses, including expert

witnesses James Goes and Jeremy Swenson, to testify with respect to spoliation of evidence, as

provided in this Court's Opinion and Order of December 5, 2019 (Dkt. 75), which states: "The

jury will be permitted to hear and consider evidence from both parties about Interstate's failure to

preserve the structural components (or make them available for inspection) and how and to what

degree Aspen American was prejudiced by Interstate's actions in that regard." Plaintiff's Motion

in Limine #8 (ECF No. 115).

> Interstate responds by arguing as follows:
>
> At the outset, Interstate notes that what Plaintiff is actually requesting that the
> Court judicially permit Plaintiff to introduce evidence at trial without any right to
> objections or cross-examination by Interstate. Granting Plaintiff's Motion in
> Limine #8 would certainly tip the "scales of justice" in Plaintiff's favor and
> eliminate the adversarial system of justice in favor of a lopsided one-way fight. As
> such, the Court should deny Plaintiff's Motion in Limine #8 in its entirety to
> preserve an element of fundamental fairness in this case.
>
> Additionally, Interstate does not object to Plaintiff's expert witnesses testifying
> with respect to the fact that Interstate cleared the debris from the collapse site (the
> alleged spoliation of evidence) and what evidence the respective experts would
> have been attempting to find in the collapsed warehouse debris. However,
> Interstate reasonably believes that Plaintiff's experts intend to go well beyond
> what they would have attempted to find and draw numerous unreasonable
> inferences and conclusions about what they were sure to find. Allowing Plaintiff
> or Plaintiff's expert witnesses to draw unreasonable inference and conclusions,
> unchecked by an appropriate and timely objection, would be unduly prejudicial to
> Interstate and would not further the interests of justice.

Defendant's Response (ECF No. 126), p. 2.

> Aspen American replies by arguing as follows:
>
> As yet another example of what became a theme in Defendant's responses to
> Plaintiff's various motions in limine, Defendant once again misconstrued the
> specific request in the underlying Motion. At its core, Plaintiff moves this Court
> to prevent Defendant from objecting to expert testimony reports on *foundational*

grounds based on the simple fact that Plaintiff's experts were prevented from obtaining requisite foundational knowledge by Defendant's spoliation of evidence. If Defendant were afforded the opportunity to benefit from this spoliation by keeping Plaintiff's expert testimony out of the purview of the jury, *this* would grossly "tip the scales of justice" in Defendant's favor despite Defendant's argument to the contrary in its Response.

Plaintiff's Reply (ECF No. 137), p. 2.

Again, both sides have a point. The Court will not enter an order permitting Aspen "to introduce evidence at trial without any right to objections or cross-examination by Interstate" and to that extent the motion is DENIED. However, Aspen American expressly states that such a blanket preclusion is *not* what it is seeking and that it merely moves the Court to preclude Interstate from objecting to Aspen American's expert evidence on *foundational* grounds. Aspen American's motion is GRANTED, however, in that Aspen American will be permitted to present evidence and testimony that its agents were unable to access or observe parts of the warehouse after the collapse since they had been removed by Interstate, and what they would have looked for if the relevant parts of the structure had not been removed. Even Interstate concedes this when it states that it "does not object to Plaintiff's expert witnesses testifying with respect to the fact that Interstate cleared the debris from the collapse site (the alleged spoliation of evidence) and what evidence the respective experts would have been attempting to find in the collapsed warehouse debris." Interstate's objection is founded on its concern "that Plaintiff's experts intend to go well beyond what they would have attempted to find and draw numerous unreasonable inferences and conclusions about what they were sure to find." Interstate will not be denied the right to object to any such testimony or to conduct cross-examination of any witnesses offering such testimony. At the same time, the Court declines Interstate's invitation to "deny Plaintiff's

Motion in Limine #8 in its entirety to preserve an element of fundamental fairness in this case."

For these reasons, Aspen American's motion in limine #8 is granted in part and denied in part.

## CONCLUSION

For the reasons explained above, the Motion in Limine Regarding Trial Issues filed by

Defendant Interstate Warehousing, Inc. (ECF No. 105) is GRANTED in part and DENIED in

part; the Motion for Separation of Witnesses filed by Interstate (ECF No. 107) is GRANTED; the

Motion to Amend/Correct Seventh Motion in Limine filed by Aspen American (ECF No. 116) is

GRANTED; the First Motion in Limine to Exclude any Evidence in Support of Defendant's Act

of God Defense filed by Plaintiff Aspen American Insurance Co. (ECF No. 108) is DENIED; the

Second Motion in Limine to Exclude Unauthenticated Climatological or Meteorological Data

filed by Aspen American (ECF No. 109) is DENIED; the Third Motion in Limine to Exclude

Expert Opinions by Persons Who Have Not Been Timely Disclosed filed by Aspen American

(ECF No. 110) is GRANTED in part and DENIED in part; the Fourth Motion in Limine to

Exclude Testimony of Witnesses Who Have Not Been Timely Disclosed filed by Aspen

American (ECF No. 111) is GRANTED; the Fifth Motion in Limine to Exclude Reference to

Snow Removal Policies filed by Aspen American (ECF No. 112) is GRANTED in part and

DENIED in part; the Sixth Motion in Limine to Exclude Defendant's Untimely Document

Production filed by Aspen American (ECF No. 113) is DENIED; the Seventh Motion in Limine

to Preclude Objections to Admission of FEMA Snow Load Safety Guide Pursuant to FRE 902

filed by Aspen American (ECF No. 114) is GRANTED; and the Eighth Motion in Limine to (I)

Preclude Objections to Inferences Made Due to Spoliation of Evidence & (II) Permit Witnesses

to Testify About Spoliated Evidence filed by Aspen American (ECF No. 115) is GRANTED in

part and DENIED in part.

The parties, their attorneys, and their witnesses are prohibited from introducing evidence of, making statements concerning, or attempting to convey to the jury in any manner, either directly or indirectly, at any time during the trial of this action, the evidence or arguments precluded by this order. The Court reiterates that rulings on motions in limine are preliminary in nature and the Court has the discretion to alter previously issued in limine rulings, within the bounds of sound judicial discretion. *Luce*, 469 U.S. at 41-42. The Court will exercise that discretion and alter or amend the rulings contain herein if warranted during trial.


Date: August 14, 2021.


  /s/   William C. Lee  
William C. Lee, Judge  
U.S. District Court  
Northern District of Indiana
